Argued and submitted August 29, 1979, affirmed in part
and reversed in part January 28, 1980

MORGAN,
*Petitioner,*

*v.*

BEAVER HEAT TREATING CORP., et al,
*Respondents.*

(WCB Nos. 78-3224, 78-2631, CA 13675)

605 P2d 732

Margaret H. Leek Leiberan, Portland, argued the
cause for respondent Beaver Heat Treating Corp. With

her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent State Accident Insurance Fund. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

The principal issue in this workers' compensation case is whether claimant's upper back and neck condition is compensable. If it is, a subsidiary question is whether State Accident Insurance Fund or EBI is the responsible insurance carrier.

Claimant is a 39-year-old truck driver who worked for Beaver Heat Treating Corporation the last three years during which he worked. On April 25, 1977, he suffered a compensable injury to his low back while moving barrels within a truck. On October 18, 1977, a determination order issued awarding claimant five percent unscheduled permanent partial disability for his low back injury. There was no appeal.

Claimant returned to work in late May, 1977, but not as a truck driver. Instead, he was relegated to lighter work, including quality control on the job site, which work entailed using a hand grinder on parts weighing as much as 120 pounds. While performing this work, claimant developed pain radiating up both arms and across his neck and shoulders. These symptoms became evident by August of 1977 and, while the pain became worse, he continued working until he was forced to quit on February 14, 1978. During that period of time, he was treated by two doctors; the treatment consisted of diathermy, which brought about only temporary relief. He has not worked since February 14, 1978, but at the time of hearing was involved in a vocational rehabilitation program.

In April of 1978, claimant filed a claim for injury or occupational disease for the neck and upper back problems; in addition, he filed a claim for aggravation benefits with SAIF, which insurer was on the risk for claimant's employer until August of 1977. After that date, EBI became the insurance carrier. Both carriers denied compensability: SAIF, on the ground that the upper back and neck condition was not an aggravation of claimant's April 1977 injury, and EBI, on the

ground that claimant's present condition was "the result of a preexisting medical condition first treated for on April 27, 1977," predating EBI's coverage.

Claimant requested a hearing, after which the referee upheld SAIF's denial of the aggravation claim and remanded the claim to EBI for acceptance of the claim for claimant's upper back and neck condition. The Workers' Compensation Board, on EBI's request for review, upheld the denial of claimant's aggravation claim, but reversed the referee's opinion remanding the claim to EBI for acceptance. This appeal followed.

The record is clear that claimant's upper back and neck condition is not the result of an aggravation of his low back injury of April, 1977. Accordingly, we affirm the Board's order affirming the referee's affirmance of SAIF's denial of the aggravation claim.

The Board's determination that claimant has failed to sustain his burden of proving that he has suffered an occupational disease, however, is more problematical. An "occupational disease" is defined in ORS 656.802(1)(a) as:

"Any disease or infection which arises out of and in the scope of the employment, and to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

In *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970), the court held that a disability resulting from a worsening of a preexisting bursitis by the claimant's work activities and conditions was compensable as an occupational disease even though the disease itself did not arise out of the employment. In *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), the Supreme Court held that in order for a claimant to prevail in this kind of case, he must prove by a preponderance of evidence that: "(1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his

pain (4) to the extent that it produces disability or requires medical services." (288 Or at 35, 602 P2d at 263.) In so holding, the Supreme Court affirmed the decision of this court in *Weller,* but disapproved of this court's suggestion that the worsening of the underlying disease must be "permanent. " The Supreme Court concluded that a temporary worsening of the underlying disease is compensable if it requires medical services or results in temporary disability. *Cf. Stupfel v. Edward Hines Lumber Co.,* 288 Or 39, 602 P2d 264 (1979); *Gibson v. SAIF,* 288 Or 45, 602 P2d 266 (1979).

In this case, claimant did have some degenerative change in his lower cervical spine area and a slight scoliosis in the dorsal area prior to August of 1977, but those conditions had been asymptomatic. As a result of his work with the employer, and commencing about August, 1977, symptoms from that preexisting condition developed which required some medical treatment and resulted in at least temporary disability by February, 1978. From the evidence we conclude that the work was a substantial contributing cause of the symptoms. The critical question is whether there is sufficient evidence in the record to sustain claimant's burden of proving that his work activity caused a worsening of his underlying condition or disease. Though the record is not as strong as it might be, we conclude that the only reasonable inference to be drawn from Dr. Pasquesi's testimony is that there was a worsening of the underlying preexisting upper dorsal and lower cervical condition. The doctor was asked whether claimant's symptoms in his neck and upper dorsal area would subside if he ceased doing the type of work he had been doing for the employer. The doctor's response was: "I am not sure they would subside necessarily. I think they would subside to some extent but I'm not sure." He went on to state that he thought they would get better. The record indicates the symptoms did, in fact, subside to some extent, but did not disappear. Claimant continues to have pain even though he has ceased doing that work.

[213]

Accordingly, we conclude that the Board erred in reversing the referee's order remanding the claim to EBI for processing and that portion of the Board's order is reversed. In all other respects the order appealed from is affirmed.

Affirmed in part and reversed in part.