Argued and submitted August 25, 1982, affirmed February 16, reconsideration denied April 1, petition for review allowed May 3, 1983 (294 Or 792)
See 296 Or 238, 675 P2d 1044 (1984)

In the Matter of the Compensation of
Terry L. Starbuck, Claimant.

## BOISE CASCADE CORP.,
*Petitioner,*

*v.*

## TERRY L. STARBUCK et al,
*Respondents.*

(79-04425; CA A23754)

659 P2d 424

Brian L. Pocock, Eugene, argued the cause for petitioner. With him on the brief was Cowling, Heysell & Pocock, Eugene.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent State Accident Insurance Fund Corporation.

Russell W. DeForest, Medford, waived appearance for respondent Terry L. Starbuck.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

Self-insured employer Boise Cascade Corporation (Boise) seeks judicial review of a determination by the Workers' Compensation Board (Board) that Boise is responsible for an aggravation of claimant's low back condition. Boise argues that a subsequent employer, insured by SAIF, is responsible under the "last injurious exposure" rule, which this court supposedly applied in *Smith v. Ed's Pancake House,* 27 Or App 361, 364, 556 P2d 158 (1976). We affirm.

Claimant had no history of low back problems before 1978. His job as a barker saw operator with Boise involved facilitating the moving of logs on a conveyer belt. On April 12, 1978, he filed a claim indicating that the injury had occurred in January. Concerning the cause, claimant indicated: "Not sure. Moving logs with pevee [*i.e.,* peavey: hooked, spiked logging tool] or fell down." The claim was filed after he had experienced low-back pain for about two months and had sought medical treatment in March, 1978. He lost no time from work; the claim was accepted as non-disabling. At the hearing on that claim, claimant testified that his back problem arose when he lifted too much weight with the peavey; he also mentioned an incident when he had had to lift a broken conveyer ramp. He admitted that there was no occasion when he had "fall[en] down in pain."

Claimant left his job with Boise in June, 1978, and started working for Northwest Quality Cabinets (Northwest), insured by SAIF, in August, 1978. He testified that there was no single, identifiable, injurious incident at Northwest, but that lifting cabinets may have irritated his back. The lifting was occasional, involving weights of about 50 to 60 pounds. He stated that his low-back condition gradually worsened from January, 1978, to January, 1979. In December, 1978, he fell over several times when his leg folded up under him because it was numb. He sought further medical treatment in January, 1979, and was diagnosed as having a herniated disc. He underwent surgery in February, 1979.

There are three medical opinions as to the cause of claimant's condition. Dr. West, who saw claimant in April,

1978, and again in January, 1979, speculated that an acute event of some sort probably happened in January, 1979, and that heavy lifting while claimant was working at Northwest "may indeed have precipitated" claimant's seeking further medical treatment. In contrast, Dr. James, to whom claimant was referred by Dr. West, found a "very strong medical probability" that claimant's herniated disc problem began at the time of the original complaint. Dr. James referred him to Dr. Yamodis for the back operation. Dr. Yamodis thought that claimant's progressive deterioration might not have resulted in surgery had he not sustained further straining, and that it was "possible" that straining at work at Northwest could have exacerbated his low-back pain. Claimant's own testimony establishes that no specific injurious incident or trauma occurred at Northwest.

The referee found that there had been a new injury while claimant was working for Northwest; he designated SAIF as the responsible insurer. The Board reversed, finding that claimant suffered no injury at Northwest:

"* * * Claimant unequivocally testified there was no injury, trauma or onset of significantly increased symptoms at that job; rather, claimant's story was one of generally constant and gradually worsening back symptoms throughout 1978 and into 1979 following his accepted back injury claim while working at [Boise].

"* * * This record cannot and does not support a finding of a new injury at [Northwest].

"* * * * *

"* * * We find the most persuasive medical reports to be * * * [those that] conclude that claimant's herniated disc most likely originated at the time of his early 1978 claim while working at [Boise]. * * * Claimant has proven his aggravation claim against [Boise] to our satisfaction."

Boise argues that the application of the last injurious exposure rule operates to assign liability to SAIF as the insurer for the last employer, whether claimant's condition is the result of an injury or is an occupational disease. In oral argument, Boise cited the Supreme Court's opinion in *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982), as supporting its position that so long as the working conditions at the last employment *could* have caused the

compensable condition, liability is imposed on the last employer. There is language in the opinion in *Bracke* that would appear to support that result.

*Bracke* involved an occupational disease claim, and the question was whether the "last injurious exposure" rule precluded the claimant from asserting her claim against an employer other than the last employer, where the working conditions were such that they *could* have caused claimant's disease. The court affirmed this court's decision that the rule *did not preclude* the claim when the medical evidence supported her contention that the disease was, in fact, contracted while she was working for a prior employer. Because that proposition was a variation on the application of the rule, the Supreme Court reviewed the various ways in which the so-called "last injurious exposure" rule has been applied.

The court pointed out that the common reference to the rule "as if it were unitary is somewhat misleading." 293 Or at 245. It went on to point out that there are at least two "last injurious exposure" rules, each serving different functions, and it attempted to explain some of the confusion that has resulted. It characterized one rule as a substantive rule of liability assignment, and the other as a rule of proof. The court said:

> "The substantive rule of liability is perhaps the most common. It operates to assign liability to one employer in cases of successive, incremental injuries. The rule serves as a substitute for allocation of liability among several potentially liable employers, each of whom would otherwise be liable for a portion of the disability. Typically in such cases, causation is readily determinable, but the task of allocation among several partially liable employers would be difficult and impractical. For example, where a worker suffers successive back injuries while working for successive employers, it would be difficult to determine the exact proportion of the resulting disability attributable to each employer. Allocation would also require undesirably duplicative and costly litigation. Instead, the rule assigns liability for the entire aggregate disability to the employer at the time of the last injury and dispenses with the need for allocation. For examples, *see, Cutright v. Amer. Ship Dismantler, supra,* and *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976). In *Davidson Baking v.*

*Ind. Indemnity,* 20 Or App 508, 532 P2d 810 *rev den* (1975), the rule was applied to incremental, determinable hearing loss.

"The other rule, the rule of proof, was the basis of our decision in *Inkley [v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980)].* There, the claimant suffered incremental hearing loss caused over a period of time when claimant was subjected to conditions which could cause the disability. During that period, however, his employment was insured by successive insurers. It could not be determined whether employment under the last insurer actually caused any additional hearing loss. This court held that the last insurer would be liable for the entire disability if the conditions of employment were of a nature which could have contributed to the disability. In such a case, the last injurious exposure rule was applied not only as a substitute for allocation, as in the first class of cases, but also for an altogether different purpose: to relieve the claimant of the 'burden of proving medical causation,' as to any specific insurer, 288 Or at 345. Thus, it is seen that one rule is to efficiently assign liability and another distinct rule fulfills a requirement of claimant's burden of proof." 293 Or at 245-46. (Footnote omitted.)

The court also stated that both rules apply to cases of occupational disease as well as to injury cases. 293 Or at 248.

We are not certain what the court meant in *Bracke* when it said there are two rules, each of which applies to occupational diseases and to injury cases. We believe that the court was pointing out two aspects of a single rule. The classic aspect is the one represented by *Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980). There, the Supreme Court classified incremental hearing loss as an occupational disease similar to asbestosis and silicosis. 288 Or at 341. The court applied the last injurious exposure rule that this court had adopted in *Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972), an occupational disease case involving asbestosis. As the court pointed out in *Inkley,* 288 Or at 342, the basis of the *Mathis* rule was Professor Larson's discussion of the last injurious exposure rule as it applied to occupational diseases:

" 'In the case of occupational disease, liability is most frequently assigned to the carrier [or employer] who was

on the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease * * *.

" '* * * * *

" 'It goes without saying that, before the last injurious-exposure rule can be applied, there must have been some exposure of a kind contributing to the condition. So, if a silicosis claimant had been transferred to outside work or to work in a place where dust conditions were not harmful, the carrier on the risk during the later period will not be held liable. But, once the requirement of some contributing exposure has been met, courts applying this rule will not go on to weigh the relative amount or duration of the exposure under various employers and carriers. * * *' 3 Larson, Workmen's Compensation Law § 95.21 (1971), quoted in *Mathis, supra,* 10 Or App at 144-45."

■ *Inkley* [1] makes it clear that the burden on the claimant in occupational disease cases under the last injurious exposure rule is not to prove that the last exposure was, in fact, the medical cause but, rather, to prove only "that the employment environment could have contributed" to the condition. 288 Or at 337. That aspect of the rule was characterized by *Bracke* as the "rule of proof."

■ It is true, as *Bracke* points out, that there is another aspect of the rule — the assignment of liability to the last employer at which the working conditions were such that they could have caused the disease. Those applications of the rule are typically clear enough in occupational disease cases.

The confusion arises primarily because of Professor Larson's use of the phrase "last injurious exposure" in connection with the imposition of liability in successive injury cases. 4 Larson, Workmen's Compensation Law § 95.12, 17-71 to 17-78. It is unfortunate, perhaps, that we quoted that language in *Smith v. Ed's Pancake House,* 27 Or App 361, 364-65, 556 P2d 158 (1976). The substance of the rule enunciated by Larson, and applied in *Smith,* is correct, but it is not appropriate to characterize it as a "last

---

[1] There is some question in *Bracke* as to just what kind of case *Inkley* was. The *Bracke* court refers to *Inkley* twice as an occupational disease case, 293 Or at 245 and 246, but in a footnote the court characterizes *Inkley* as a case of "incremental injury." 293 Or at 250 n 5.

injurious exposure" rule. Rather, it is more accurate to call it "the last injury rule." Omitting Larson's first paragraph, the rule is:

> " 'If the second [*i.e.,* last] injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of crutches which his first injury requires him to use. This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

> " 'On the other hand, if the second [*i.e.,* last] incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributes the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a pre-existing condition.' " 27 Or App at 364-65, quoting 4 Larson, Workmen's Compensation Law 17-71 to 17-78, § 95.12 (1976).

■    Although that rule imposes total liability for a disability on the employer for whom the claimant worked at the time of the last injury, that liability is not imposed (as it would be in the case of an occupational disease) because the work exposure *could* have caused the disability; it is imposed because there was a traumatic incident that contributed independently to the claimant's disability. We believe that the court in *Bracke* intended that application of "the rule" as it relates to *injury* cases when it said that "the substantive rule of liability" applies to them. That is, total liability is assigned to the last employer, even though the prior injury may be the major cause of the claimant's disability following the second injury.

■    That does not, however, take care of "the rule of proof," and we do not understand *Bracke* to require *only* that a claimant in a successive injury case prove that the working conditions at the last employer *could* have caused

his disability. To the contrary, the court approved our decision in *Smith,* which requires proof of actual, independent contribution of the second employment to the disabling condition. Under the *Bracke* "rule of proof," potential contribution would suffice. Obviously, different results would follow in cases where the proof establishes only potential contribution: under *Smith,* the first employer would be liable; under the *Bracke* "rule of proof" the last employer would be liable. That problem exists here. The preponderance of the evidence establishes not that claimant's work exposure at Northwest actually contributed to his back disability, but only that it could have. If applied, the *Bracke* "rule of proof" would operate to shift responsibility to the last employer, insured by SAIF, whereas application of the rule under *Smith* would render the first employer (Boise) responsible.

We do not believe the court in *Bracke* intended to create that problem or, for that matter, to change the law. The issues in *Bracke* required decisions only on whether a claimant is precluded by the last injurious exposure rule from filing a claim against a prior employer and whether that employer may rely on that rule to impose responsibility on later employers. In resolving those issues, the court discussed the various applications of what it called two rules. In doing so, it accepted Larson's articulation of the two rules as applying to different classes of disabilities. As stated above, Larson says one rule (the rule we adopted in *Smith*) applies to accidental injuries; the other rule (adopted in *Mathis* and approved in *Inkley*) applies to occupational diseases.

*Bracke* attempts to synthesize the two rules by characterizing the injury cases it cites as cases of "successive, incremental injuries." Evidently, *Smith* itself would be such a case, even though in *Smith* there were two distinct traumas or injuries, one suffered in the first employment and one in the second. But *Bracke* makes no attempt to reconcile the different results that might obtain from extending the "rule of proof" to injury cases. That question was not involved, and the court's statement that the "rule of proof" applies to injury cases is *dicta.* We believe the court was misled by accepting Larson's characterization of the successive injury cases as "last injurious

exposure" cases, which they are in the sense only of assigning total liability to the last employer. That characterization is confusing and misleading, and we disapprove that portion of the *Smith* language, but we approve the rule we actually applied.

■ Boise argues that SAIF is responsible whether claimant's condition here is the result of an injury or of an occupational disease. Under our interpretation of *Bracke,* the "rule of proof" it explained is applicable only to occupational diseases. It is therefore necessary to determine which kind of claim this one is. The only Oregon cases of which we are aware that treat back injuries as occupational diseases are those applying the rule in *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970), that worsening of a preexisting disease caused by employment is compensable as an occupational disease. *See, e.g., Morgan v. Beaver Heat Treating Corp.,* 44 Or App 209, 212, 605 P2d 732 (1980) (thoracic and cervical condition temporarily worsened by employment; *Geenty v. Hyster, Inc.,* 23 Or App 146, 151, 541 P2d 486 (1975) (unusual twisting of forklift driver's neck worsened underlying cervical disc disease). This is not such a case. Claimant had no history of back trouble prior to his 1978 compensable injury at Boise. Moreover, claimant identified his present claim as being for an injury in his request for hearing and accompanying affidavit, despite an apparent inability at the hearing to describe in any detail a specific episode of trauma.

In *Valtinson v. SAIF,* 56 Or App 184, 641 P2d 598 (1982), we determined that a low-back problem was an injury rather than an occupational disease, because (1) it was not gradual in onset over a long period of time, but evidenced itself within a relatively short, discrete period of time, and (2) it was unexpected, in that the claimant had had no previous back problems, rather than being inherent in continued exposure. Here, claimant's problems evidently surfaced relatively soon after an incident in January, 1978, for in March claimant sought medical treatment because he had had two months of pain. Furthermore, he had experienced no previous back trouble. There is no claim here that the back condition was an inherent hazard of continued exposure to the particular conditions of employment; rather, the record, meager as it is, provides more

support for the conclusion that the problem was the result of an episode of unusual stress encountered in moving logs or a conveyer belt. Under the analysis in *Valtinson,* this claim would be for an injury. We conclude that claimant's back condition was the result of an injury, rather than an occupational disease.

Given that conclusion, the rule of *Smith* applies, and it is not the "last injurious exposure" rule. *Smith* is the rule applied by the Board to find Boise liable on the ground that there was no new injury during the employment with Northwest to contribute independently to the back condition. We agree with the Board. Under the *Smith* analysis, and on the basis of the evidence, both lay and medical, we conclude that claimant's back condition was a recurrence or worsening of the original injury; that is, that was no second injury, and the second employment did not independently contribute to the condition. Boise is the responsible employer.

Affirmed.