Argued and submitted November 29, 1982, reversed and
remanded with instructions May 25, reconsideration denied July 22, 1983,
petition for review denied January 17, 1984 (296 Or 350)

In the Matter of the Compensation
of Steven Lundmark, Claimant.

## DONALD M. DRAKE COMPANY,
*Petitioner,*

*v.*

## LUNDMARK et al,
*Respondents.*

(80-04474, 80-03297; CA A22003)

663 P2d 1303

Margaret H. Leek Leiberan, Portland, argued the cause for petitioner. With her on the brief was Mitchell, Lang & Smith, Portland.

Randee Fenner, Portland, argued the cause for respondent Fred J. Early Company. With her on the brief were Brian B. Doherty, and Miller, Nash, Yerke, Wiener & Hager, Portland.

Michael N. Gutzler, Portland, waived filing brief for respondent Steven Lundmark.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

Richardson, P. J., specially concurring.

## JOSEPH, C. J.

The issue in this case is which of two successive employers is responsible for compensation for claimant's back condition. Both denied compensability. The first employer, Fred J. Early Company (Early), contended that the back problem was not the result of an injury incurred during employment with the company. The second, Donald Drake Company (Drake), claimed that the condition resulted from a pre-existing back problem. The referee characterized the condition as an injury incurred during the first employment and held Early responsible. The Board found that the condition was an occupational disease and, applying the "last injurious exposure" rule, held Drake responsible.

■ Neither party contends here that claimant's back condition is anything other than an occupational disease. Both parties argue about the proper application of the "last injurious exposure" rule.[1] Nevertheless, whether it was proper to apply the rule to hold Drake responsible depends on whether claimant's condition was an injury or a disease. *Boise Cascade Corp. v. Starbuck,* 61 Or App 631, 659 P2d 424 (1983). Unlike the situation in *United Pacific Ins. v. Harris,* 63 Or App 256, 663 P2d 1307 (1983), where the referee and the Board both treated the claim as involving an occupational disease, and no party challenged that characterization in this court, the Board here rejected the referee's injury characterization. The nature of the claim is decisive.

Claimant, 31 years old, had worked for eight years as an "operating engineer" before beginning work for Early on

---

[1] Drake argues that, under *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982), it is entitled to shift responsibility imposed under the "last injurious exposure" rule to Early by showing that claimant's previous employment *actually* caused his "disease." *Bracke* does not say that proof of actual causation is a defense to liability that may be asserted by the last employer. *SAIF v. Luhrs,* 63 Or App 78, 663 P2d 418 (1983). As stated in *Fossum v. SAIF,* 293 Or 252, 256, 646 P2d 1337 (1982), decided the same day as *Bracke,*

> "In applying the last injurious exposure rule to claims for occupational diseases, however, the issue is not which employment *actually caused* the disease, but which employment involved conditions which *could have caused it.*" (Emphasis supplied.)

*Bracke* holds only that, when a claimant proves actual causation during a previous employment, that employer cannot use the "last injurious exposure" rule to assign responsibility to a later employer merely because the latter employment could have caused the disease.

January 21, 1980. He had had no previous back problems. At Early, half of his work day consisted of operating a front-end loader to scoop up materials and "ram" them into a pile. The remainder involved operating a crane and doing light manual lifting. He testified that operation of the loader required "constant turning and moving and back and forth balancing."[2] He said that after two or three weeks he started having trouble with the transmission on the loader and, when he attempted to change directions with the machine, it would "instantaneous[ly] grab" as if he were "driving into a brick wall," causing a "terrific shock" that was "really affecting [him]." At the same time the loader's transmission troubles began, claimant also began to have neck and back pains. He said that he had complained about the pain to other employes. He continued operating the loader throughout his employment with Early, and his back pains grew progressively worse. He was fired on March 3, 1980, for tipping over a crane that he was operating without safety cantilevers.

Claimant was unemployed for about a week. During that time, his pain "seemed to kind of relieve itself a bit" but did not go away. Nevertheless, he called his union and said he was ready to go to another job. On March 12, 1980, he began a three-day job with Drake that involved running front-end loaders similar to the one at Early, but larger and more smooth running. They had no transmission problems. They bounced when he drove over potholes, but he said that the road conditions were the same at both jobs. He testified that, after two nine-hour work days at Drake, he could not stand the pain any longer and did not return to work.

Claimant was diagnosed as having "thoraco-cervical strain with attendant mild myofascitis." He was seen twice by Dr. Ebert, who reported:

> "The [patient's] medical condition is clearly related to his employment in February of 1980. The 2 days which he worked subsequently for Donald M. Drake only resulted in temporary symptomatic worsening."

He was also seen by Dr. Pasquesi, who concluded:

---

[2] Claimant said that, if he were working with the loader for *eight* hours, it would go forward or backward "probably 300 or 400 times."

"In my opinion, this patient has an occupational disease, which admittedly was becoming worse for a month or so prior to leaving his employment before working for the Donald M. Drake Company and made worse by the work at the Donald M. Drake Company.

"From a medical standpoint, both conditions are applicable as far as responsibility of his symptoms and having to lay off work, but the patient was having increasing symptoms before working the last two days at the Donald M. Drake Company. He admittedly became worse at the Donald M. Drake employment."

On March 14, 1980, claimant filed a claim with Drake, describing his "injury" as "[d]riving the loader jolted me too much, creating pain in neck and back."

He indicated the date or hour of injury was "All day" on March 13, 1980. On April 9, 1980, he also filed a claim with Early, stating, "I was operating heavy equipment, front end loader, and it caused back and neck to hurt," which occurred in February, 1980.

The referee found:

"* * * [C]laimant's employment at Fred J. Early Co. in operating the old loader to have placed sufficient strain on his body to cause his injuries to his neck and back. This conclusion is supported by Drs. Ebert and Pasquesi * * *. Claimant's subsequent difficulty while at Donald M. Drake Co. was not a new injury but a worsening of claimant's injury which he received while at Fred J. Early Co."

The Board disagreed. It found that

"* * * under the standards of *James v. SAIF,* 290 Or 343, 348 (1980), claimant has an occupational disease. In such a situation, the most recent employer is responsible under the last injurious exposure rule if that employment environment 'could have' contributed to the disease. *Inkley v. Forest Fiber Products Co.,* 288 Or 337, 344 (1980). From Dr. Pasquesi's opinion that claimant's work for the second employer, Drake, *did* worsen his condition, it rather easily follows that claimant's work at Drake *could have* contributed to the disease and Drake is responsible." (Emphasis is the Board's.)

In *James v. SAIF,* 290 Or 343, 624 P2d 565 (1980), the Supreme Court approved the distinction made between "injury" and "disease" in *O'Neal v. Sisters of Providence,* 22 Or

App 9, 537 P2d 580 (1975), where we quoted 1B Larson's Workmen's Compensation Law § 41:31:

> "* * * What set[s] occupational diseases apart from accidental injuries [is] both the fact that they can[not] honestly be said to be unexpected, since they [are] recognized as an inherent hazard of continued exposure to conditions of the particular employment, and the fact that they [are] gradual rather than sudden in onset. * * *"

In *Valtinson v. SAIF,* 56 Or App 184, 188, 641 P2d 598 (1982), we construed the phrase "sudden in onset" to mean occurring during a short, discrete period, rather than over a long period of time. Claimant's condition meets this aspect of the injury test in that his back trouble *coincided precisely* with the traumatic jolting of the faulty loader. Claimant thus points to an identifiable event that caused his disability. The fact that his pain grew progressively worse over his six-week employment with Early does not make it "gradual in onset."

Moreover, claimant's condition meets the second aspect of the injury test in that it was unexpected. He had operated similar equipment for eight years prior to his employment with Early without any back trouble. It is more likely that his back condition was the result of the jolting of the loader at Early than "an inherent hazard from continued exposure" to the operation of front-end loaders, which the referee found usually involves bumping and bouncing.[3]

We conclude that claimant's back strain was the result of an injury which occurred at Early, rather than an occupational disease. *See Boise Cascade v. Starbuck, supra,* 61 Or App at 641. The "last injurious exposure" rule is inapplicable. Early is responsible.

Reversed and remanded with instructions to reinstate the referee's order.

---

[3] The concurrence would have us say that it is not unexpected that the operation of front-end loader with faulty transmission could cause disability and that, therefore, we recognize that claimant's back trouble is an "inherent hazard of continued exposure to conditions of [his] particular employment." To read this aspect of the "rule" as narrowly as the concurrence would have us do runs counter to our commonsensical notion of what institutes a traumatic injury. In that view, any disability caused by the faulty malfunctioning of equipment requiring repetitive operation would be treated as a disease. There is no authority for that.

**RICHARDSON, P. J.,** specially concurring.

In determining which of two successive employers is responsible for compensation for claimant's present back condition, the lead opinion concludes the dispositive analysis is whether the cause of the disability is an injury or an occupational disease. The opinion states that there was an injury and that Early is responsible. I disagree with the conclusion that claimant's disability is the result of an injury rather than an occupational disease. I, however, agree that Early is responsible for the claim.

The distinction between industrial injury and occupational disease has become blurred under the Workers' Compensation Act but it still is important, at least for the purpose of time limitations for claim filing and for application of the last injurious exposure rule. *See, e.g., Boise Cascade Corp. v. Starbuck,* 61 Or App 631, 659 P2d 424, *rev allowed* 294 Or 792 (1983). The distinction also assumes some importance in determining the cause of the disability, *i.e.,* whether the disability is related to the work environment. The definition of occupational disease devised by the courts is based, in part, on the necessities of applying the dictates of the Act and is not necessarily consonant with the medical definition of disease. In some measure the definition is an attempt to contrast occupational disease with accidental injury.

The key case for the appropriate definition of occupational disease under the Act is *O'Neal v. Sisters of Providence,* 22 Or App 9, 537 P2d 580 (1975). In that case we adopted the substance of the definition from 1B Larson's Workmen's Compensation Law § 41:31:

> "* * * What set[s] occupational disease apart from accidental injuries [is] both the fact that they [can] not honestly be said to be unexpected, since they [are] recognized as inherent hazard of continued exposure to conditions of the particular employment, and the fact that they [are] gradual rather than sudden in onset. * * *"

The facts of *O'Neal* put the definition in context. The claimant worked as a hospital maid which required her to push a heavy cleaning cart over the carpeted hallways. As a result, she developed strain and muscle spasms in her legs causing her disability. We held that she was suffering from an occupational disease because the results were gradual in onset, as they

occurred over a period of time and could not honestly be said to be unexpected, *i.e.,* it could be expected that pushing a heavy cart would cause strain and muscle spasms in the worker's legs. One of the principal bases for the distinction between the two types of disability we noted in *O'Neal* is that an accidental injury results from a distinct identifiable event such as a trauma that a worker can point to as the precipitating cause of the disability.

As we indicated in *Valtinson v. SAIF,* 56 Or App 184, 641 P2d 598 (1982), the identifiable event distinguishing an injury from an occupational disease need not be an instantaneous happening. In *Valtinson* the claimant, who had been free from back pain for some period of time, drove a van from Grants Pass to Portland and experienced back pain during the trip. We held that he suffered an accidental injury because the trauma producing the disability occurred over a short discrete period of time.

The lead opinion takes a lead from *Valtinson* and utilizes the analysis there by stretching the time period of *Valtinson*—a one day trip—to include a six-week exposure to the jolting and jarring associated with the front end loader driven by claimant. Because claimant here had no back problems prior to starting his duties for Early, the lead opinion concludes the results of driving the front end loader were unexpected and were related to a discrete period of time, *i.e.,* six weeks.

Claimant identified the jerking and jolting of a particular front end loader as the cause of his back problem. The machine he drove for approximately six weeks was generally rough riding and had a faulty transmission that caused a substantial jolt each time a gear change was made. He changed gears from forward to reverse approximately 200 to 300 times each shift. Such work conditions over a substantial period of time could reasonably be expected to cause a back strain. Although the jolting may have been more intense than the exertion needed to push the cleaning cart described in *O'Neal,* it is conceptionally the same for determining if the resulting disability is an occupational disease. The work condition experienced by claimant and the resulting disability more nearly fit the description of an occupational disease set out in *O'Neal*

than the accidental injury described in *Valtinson.* I would conclude that claimant's disability is an occupational disease.

In situations where there are successive employers or successive periods of employment covered by different compensation carriers it is necessary to assign responsibility for the compensation due. The allocation of responsibility is determined by application of the last injurious exposure rule. *See Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982); *Boise Cascade Corp. v. Starbuck, supra.* In *Starbuck,* we concluded that the last injurious exposure rule applied particularly to occupational disease rather than accidental injury. In essence, the rule of substantive responsibility places sole responsibility on the last employer or insurer if the conditions of employment during that period could have caused the disability. Because I conclude that claimant suffers from an occupational disease, the critical inquiry is whether the working conditions at Drake could have caused claimant's present back problems. As indicated, claimant identified that the particular idiosyncrasies of the front end loader he used at Early as the cause of the back condition. The machine he drove for two days at Drake did not have a faulty transmission and was much smoother operating than the loader at Early. When viewed as a cause of the disability, the conditions at Early are not the same as the work conditions at Drake. It oversimplifies the analysis to compare only the type of machinery operated as Early does in its brief. I conclude that the working conditions could not be said to be the same at Drake and, therefore, that an important part of the last injurious exposure analysis has not been established. Early is responsible for the claim.