Argued and submitted April 1, reversed and remanded December 26, 1985, reconsideration denied April 11, petition for review denied April 29, 1986 (301 Or 76)

In the Matter of the Compensation of
Eula L. Crowe, Claimant.

CROWE,
*Petitioner,*

*v.*

JELD-WEN, INC.,
*Respondent.*

(82-06883; CA A33475)

712 P2d 145

Thad Hettle, Salem, argued the cause for petitioner. With him on the brief was Rolf Olson, Salem.

Brian Pocock, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge,* and Warden, Judge.

WARDEN, J.

---

* Joseph, C. J., *vice* Newman, J.

## WARDEN, J.

Claimant seeks judicial review of an order of the Workers' Compensation Board which reversed the referee's order holding that claimant had suffered an aggravation of her earlier compensable industrial injury. A back injury sustained in one employment, followed by a worsening of symptoms during a later employment, is involved. The issue is whether the "last injurious exposure" rule applies to impose liability on the second employer. We hold that conditions existed at the second employment that could have, but did not, contribute to the disability, that claimant merely suffered an aggravation of her compensable industrial injury and that the first employer is responsible. We reverse and remand with instructions to reinstate the referee's order.

There is no dispute as to the facts. They are set out in the findings of the referee:

"Claimant, presently forty-nine years old, injured her low back on April 20, 1979, while lifting a pallet of corrugated rail from one conveyer belt to another. Her employer at the time was Jeld-Wen. She filed a claim, was taken off work for one week, and returned to work and reinjured her low back and coccyx on August 10, 1979. She filed another claim which was accepted and treated by the insurer as an aggravation of the April injury. Prior to April 1979, she had had no back problems.

"Claimant saw Dr. Klump for neurological evaluation in mid-November 1979 for her continued low back and right leg pain. Lumbosacral strain related to work was diagnosed with right leg pain of undetermined origin. A program of physical therapy was instituted. Claimant improved and was released for work on January 7, 1980.

"A repeat examination and a myelogram were done by Dr. Campagna in late January 1980. Dr. Campagna found a normal lumbar spine but opined claimant had nerve root compression at L5-S1 on the right 'secondary to herniated nucleus pulposus as a result of industrial injury of April 20, 1979.' Pelvic traction and physical therapy were advised. An EMG failed to reveal evidence of motor root compression. Claimant was discharged from the hospital with a final diagnosis of lumbar sprain. Thereafter, she made a good recovery with minimal disability despite some occasional low backache and pain and numbness in the right leg. Claimant returned to work on March 10, 1980.

"Claimant ceased working with Jeld-Wen in May 1980 and sought lighter employment with Klamath County in the building maintenance department. An October 17, 1980, Determination Order awarded claimant temporary total disability only.

"Nothing much happened until March 19, 1982, when claimant returned to see Dr. Campagna for increasing complaints since July 1980, including constant low back pain and pain radiating down the right leg to the foot. Dr. Campagna now thought claimant to have nerve root irritation at S1, also secondary to the industrial injury of April 1979. Repeat EMG and X-rays were normal as was a repeat myelogram which showed no evidence of disc herniation. Again, final diagnosis was lumbar strain.

"In the intervening two years, claimant had worked primarily as a painter for the maintenance department. This involved considerable bending, stooping, stretching, lifting and carrying. Claimant ceased work on March 16, 1982, and quit entirely on April 2, 1982, due to increasing pain. She saw no doctors in the intervening period between July 1980 and March 1982.

"In June 1982 the insurer referred claimant to Dr. Donald Warren, who was unable to definitively state whether or not claimant's current problems related to the April 1979 industrial injury other than to note claimant's assertions in this regard. Dr. Warren found chronic back and right leg pain, with a trigger point just to the right of the coccyx, essentially in the area where she fell in August 1979. Claimant was treated in the area of the coccyx with steroid and anesthetic injection which resulted in about an 80-percent improvement of her pain. Dr. Campagna likewise opined in July 1982 that he was unable to relate claimant's condition to her April 1979 industrial injury.

"On June 22, 1982, the insurer denied claimant's aggravation claim on March 22 on the basis of lack of relationship to the April 1979 industrial injury. As a result, no further medical bills were paid. Claimant requested payment of bills under ORS 656.245.

"Claimant then went to work in July 1982 as a cafe owner/operator and also as a part-time manager of a pizza parlor. These jobs were less demanding than her work with the county although standing any prolonged period tended to cause her back to hurt. Claimant is not presently employed.

"By January 13, 1983, some six months after his initial

opinion, Dr. Campagna changed his mind, stating claimant had become medically unstationary by March 19, 1982, and this disability represented a worsening of her low back condition arising from the April 1979 injury. This did not exclude the possibility that claimant's work activities for the county contributed at least in part to her back problems.

"According to claimant, her low back pain never subsided or went away for any length of time throughout the two years she worked for the county. About two months after she began employment there, her back pain became more constant and she missed some time from work due to back problems. About six months before she quit, she asked to be transferred to a clerical position. Two months before her resignation, she further indicated to the personnel manager that her back was becoming worse and that she could not stay in her present job.

"Claimant complained constantly about her back to her immediate supervisor. The supervisor did not know how much time claimant missed because of her back. To the best of his knowledge, claimant sustained no new injuries while working for the county. Claimant appeared to have most difficulty with climbing or standing on ladders. She states she lost up to five or six days per month of work due to her back, especially during the last six months."

The referee held that claimant's low back condition resulted from her April, 1979, industrial injury and had worsened and that Jeld-Wen was the responsible employer. The Board reversed, concluding from the evidence that employment with Klamath County contributed to claimant's disability. It approved Jeld-Wen's denial of claimant's aggravation claim.

■ ■   The first inquiry is whether the claim is one for occupational injury or disease. Generally, injuries are caused by identifiable, discrete events. In contrast, diseases usually have a gradual onset, and their existence is often not perceived until after the time of affliction. *Bracke v. Baza'r,* 293 Or 239, 246, 649 P2d 1330 (1982). The fact that pain grows worse over a period of time does not make a condition gradual in onset. *Donald Drake Co. v. Lundmark,* 63 Or App 261, 266, 663 P2d 1303 (1983), *rev den* 296 Or 350 (1984).

■ ■   Respondent argues that the activity at Klamath County caused an occupational disease. The fact that activity at the second employment caused a condition acquired in the

first employment to flare up or worsen does not convert the occupational injury into an occupational disease. *See, e.g., Donald Drake Co. v. Lundmark, supra.* "An occupational disease is stealthy and steals upon its victim when he is unaware of its presence and approach. Accordingly, he cannot later tell the day, month or possibly even the year when the insidious disease made its intrusion into his body." *White v. State Ind. Acc. Com.,* 227 Or 306, 322, 326 P2d 302 (1961). To the contrary, in this case claimant knows precisely when her back troubles began—the dates of her two accidents at Jeld-Wen. She had never had back trouble before but has been plagued with it ever since. Claimant's condition is the result of an occupational injury, not a disease.

■ ■    The "last injurious exposure" rule in a successive occupational injury context places full liability on the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability. *Bracke v. Baza'r, supra,* 293 Or at 244 (quoting 4 Larson, Workmen's Compensation Law, § 95.12, 17-71 - 17-78). The rule operates to place liability on the last employer "[i]f the trier of fact is convinced that the disability was caused by successive work-related injuries but is unconvinced that any one employment is the more likely cause of the disability." *Boise Cascade Corp. v. Starbuck,* 296 Or 238, 245, 675 P2d 1044 (1984). However, when a compensable injury at one employment contributes to a disability occurring during a later employment involving work conditions capable of causing the disability, but which did not contribute to the disability, the "last injurious exposure" rule does not apply, and the first employer is liable. *Boise Cascade Corp. v. Starbuck, supra,* 296 Or at 244. Whether the work conditions at the later employment contributed to the disability is a question of fact. *Boise Cascade Corp. v. Starbuck, supra,* 296 Or at 244-45.

■    On *de novo* review, we find that the bending and stooping associated with claimant's second employment, although capable of causing a back disability, did not actually contribute to it. Claimant was never entirely free from back pain after the first injuries incurred at Jeld-Wen. The disability was in existence before she ever began work at Klamath County. She merely experienced continuing symptoms and increased pain from her original injury when she

engaged in continued activity for the county. Consequently, Jeld-Wen, the first employer, is responsible.

In determining that the "last injurious exposure" rule is not applicable, we take note of the fact that there was no new injury at Klamath County. "[F]or the last injurious exposure rule to apply at all under the employer's successive-injury theory of the case, there must be evidence of a second injury which materially contributed to the claimant's disability." *Peterson v. Eugene F. Burrill Lumber,* 294 Or 537, 543, 660 P2d 1058 (1983); *see also Firemen's Fund Ins. Co. v. Ore. Ptld Cement Co.,* 63 Or App 63, 66, 663 P2d 416 *rev den* 295 Or 617 (1983).

■     Although it is true that the identifiable event that distinguishes an injury need not be an instantaneous happening, it must occur in a discrete period, rather than over a long period of time. *Valtinson v. SAIF,* 56 Or App 184, 188, 164 P2d 598 (1982). That requirement is not satisfied here. The activity at Klamath County occurred over a period of approximately two years. In contrast, in *Valtinson,* the activity that was deemed an injury occurred during one working day. *See also Donald Drake Co. v. Lundmark, supra,* 63 Or App at 266 (injury coincided with traumatic jolting of faulty loader). In sum, there was no new injury at Klamath County that concurred with the first injury to cause the disability. Like the situation in *SAIF v. Brewer,* 62 Or App 124, 129, 659 P2d 988 (1983), there "is no persuasive evidence that claimant's work at [the second employment] contributed to the *causation* of the chronic back condition; rather the evidence shows only that the [second employment] aggravated the continuing back problem and culminated in a second period of disability." (Emphasis in original.)

Reversed and remanded with instructions to reinstate the referee's order.