Argued and submitted September 18, 1989, reversed and remanded for further proceedings January 17, 1990

In the Matter of the Compensation of
Juanita J. Morrow, Claimant.

**MORROW,**
*Petitioner,*

*v.*

**PACIFIC UNIVERSITY et al,**
*Respondents.*

(86-06758; CA A50479)

785 P2d 787

Karen M. Werner, Eugene, argued the cause and filed the brief for petitioner.

Kate Waldo, Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief were Dave

Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Christine Chute, Assistant Attorney General, Salem.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

DEITS, J.

### DEITS, J.

Claimant seeks review of an order of the Workers' Compensation Board upholding SAIF's denial of her claim for compensation. She argues that the Board erred in holding that her claim is for an occupational disease rather than an occupational injury and that, under either standard, her condition is compensable. We reverse and remand.

Claimant, age 58, was employed by Pacific University as an office manager in its optometry clinic. She had worked there for seven years. She had surgery in 1977 to clip a ruptured brain aneurysm. Six months later, a fall caused the clip to loosen, and she underwent surgery again. She sought no further medical treatment for the aneurysm. Since the time of that surgery, she has suffered nausea, headaches, high blood pressure and occasional light-headedness.

On January 21, 1986, claimant was told by her supervisor that her job title was going to be changed from "office manager" to "operational supervisor." She was unhappy with the change and viewed it as a demotion. Later the same day, her supervisor and one of the university's vice presidents met with her to discuss some variances between bookkeeping entries and actual deposits. She was not accused of theft. However, after interviewing her, the supervisor told her that she was being suspended immediately without pay for mismanagement. Claimant was very upset by the events of the day and left immediately. She has difficulty remembering what happened that night and the next day, but she apparently became disoriented, missed her bus stop on the way home and did not know whether it was day or night. The next evening, her apartment manager found her in a confused state and took her to a hospital. The examining doctor stated in his report that she had complained of a severe headache and nausea and that she was lethargic, but oriented. She was hospitalized from January 23 to January 30, 1986.

The medical experts were not able to provide a certain diagnosis. Dr. Smith, claimant's treating neurosurgeon, believed that there were several possible explanations. He thought that the most likely causes of her condition were an unwitnessed seizure or a hysterical disassociative state. Smith

indicated that the earlier brain injury made her more susceptible to seizure activity and that her state when she was admitted to the hospital was consistent with a seizure. The other potential causes that he thought were somewhat likely were a disassociative state or a transient global amnesia. He testified that it is a reasonable medical probability that the emotional stress from the job incident was connected to a seizure or disassociative state and that, if what she suffered was a global transient amnesia, the emotional trauma could only have played a minor role. Dr. Brown, another neurologist who reviewed claimant's medical file in June, 1986, thought that the angiogram taken at the time of the incident indicated the possibility of two distinct aneurysms. He did not believe that there could be a relationship between the earlier ruptured brain aneurysm, claimant's stress from the incident at work and the disability.

The referee concluded that the medical evidence was based on presumptions and guesses that would not support a conclusion that claimant's condition is compensable. The Board affirmed the referee, but on a different ground. It held that claimant's condition, which it identified as a "brain aneurysm and its sequela [sic]," is an occupational disease rather than an occupational injury. It then concluded that claimant had not proved that her work activities were the major contributing cause of her disability and, that, therefore, she had not established a compensable occupational disease.

■ Claimant first argues that the Board erred in concluding that her claim should be treated as an occupational disease claim rather than an injury claim.[1] We agree. Oregon has adopted the distinction between an "injury" and a "disease" explained in 1B Larson, *Worker's Compensation Law* § 41:31:

" "* * * What set[s] occupational diseases apart from accidental injuries [is] both the fact that they can[not] honestly be

---

[1] It is unclear whether claimant initially filed the claim as an occupational disease or as an occupational injury. On the claim form, she indicated that the claim was for a "brain aneurism [sic] and seizure." SAIF acknowledged the claim "for an industrial injury to your brain" and denied her "condition diagnosed as brain aneurysm." At the hearing, claimant's attorney stated that she was not seeking compensation for the preexisting aneurysm, but for the episode for which she was hospitalized in 1986.

said to be unexpected, since they [are] recognized as an inherent hazard of continued exposure to conditions of the particular employment, and the fact that they [are] gradual rather than sudden in onset.* * *' "

*James v. SAIF,* 290 Or 343, 348, 624 P2d 565 (1980); *Donald Drake Co. v. Lundmark,* 63 Or App 261, 266, 663 P2d 1303 (1983), *rev den* 296 Or 350 (1984).

The Board concluded that that test was satisfied:

"Here, claimant underwent a rather high degree of on-the-job stress on January 21, 1986. Within a span of only a few hours, her job title was changed which she viewed as a demotion, and later she was given an immediate suspension under accusation of mismanagement. Moreover, she had recently sought medical attention for high blood pressure and was treated with a diuretic for several days. Considering the unusually stressful events of January 21, 1986 coupled with the recent treatment for high blood pressure, we find that *claimant's aneurysm and resulting amnesia [sic] was not unexpected.*

"Moreover, the aneurysm condition was not sudden in onset. Although claimant was emotionally upset following her job suspension on January 21, 1986, she left work in no apparent physical distress. She caught a bus and rode it to her apartment. That evening she spoke on the telephone with a friend. Some time between the time of that telephone call and the next evening, she became disoriented and lost track of time. On January 23, 1986, she was taken to a hospital. We find that the onset of claimant's aneurysm condition *was not 'sudden.'*

"Accordingly, in our view, the present case should be analyzed as a *claim for occupational disease,* rather than for injury." (Emphasis supplied.)

The Board's conclusion that claimant's recent problems with high blood pressure made her condition "not unexpected" is in error. There is no evidence that high blood pressure or the problems claimant suffered on January 21 were risks inherent in her work. *See O'Neal v. Sisters of Providence,* 22 Or App 9, 537 P2d 580 (1975). Although she apparently did suffer from stress, there is no evidence that her work duties subjected her to ongoing stress. Since the time of her brain surgeries in 1977, she had sought no medical treatment for that condition. The Board's conclusion that claimant's

problems in January were not unexpected is not supported by substantial evidence.

We next consider the Board's conclusion that claimant's condition did not occur suddenly. In order to be considered "sudden," a condition must occur "during a short, discrete period, rather than over a long period of time." *Donald Drake Co. v. Lundmark, supra,* 63 Or App at 266. It is not necessary that the injurious event be an instantaneous happening with a traumatic, sudden cause. The Board's conclusion that claimant's condition was not sudden is also not supported by substantial evidence.

Accordingly, we conclude that the Board erred in considering claimant's claim as being for an occupational disease. On remand, the Board should view the claim as one for an injury and determine if claimant's job was a material contributing cause of her disability. *Harris v. Albertson's Inc.,* 65 Or App 254, 257, 670 P2d 1059 (1983).

Reversed and remanded for further proceedings not inconsistent with this opinion.