Argued May 31, affirmed July 27, 1972

MATHIS, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 371-740),
*Appellant.*
499 P2d 1331

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Larry Dawson,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Claimant incurred a compensable occupational disease, asbestosis, during the course of his employment. His claim against his last employer was denied by the State Accident Insurance Fund, the defendant. Claimant requested a hearing on his rejected claim and, pursuant thereto, an order was entered by the hearing officer of the Workmen's Compensation Board denying the claim because there was "neither medical-causal relationship or legal-causal relationship connecting this workman's asbestosis with his * * * [last] employer."

Claimant rejected the order of the hearing officer, which, under ORS 656.808① acted as an appeal to the medical review board; the Workmen's Compensation Board then certified the record to the circuit court pursuant to ORS 656.810(4).② The comments following the medical board's findings, set out infra,

---

① ORS 656.808. "A final order of the hearing officer in any claim involving occupational disease may be rejected by the claimant or employer, in writing, filed at the office of the Workmen's Compensation Board within 90 days after the date of such order. Such rejection acts as an appeal to the medical board of review."

② ORS 656.810 provides:

"* * * * *

"(4) In any case involving an issue of the timeliness of filing a claim or other legal issue not to be determined by the medical board of review, the Workmen's Compensation Board shall within 30 days of the filing of the rejection certify the claim record to the circuit court of the county where the disease was incurred; and the issue shall be determined by the court without jury based upon such record and such other evidence as in the court's discretion may be required."

generally supported the hearing officer's order. The circuit court, however, reversed the order of the hearing officer and remanded the case to the Workmen's Compensation Board for entry of an order allowing compensation. Defendant appeals.

Claimant was disabled in September 1970. He had been an asbestos worker since 1939, during which time he had worked for several employers. His last employment with Metalclad Insulation commenced in April of 1970 and ended in about four months. On September 2, 1970, after a routine physical examination, claimant was informed that he had contracted asbestosis and was advised to discontinue his work in asbestos-related employment.

Claimant testified his work with Metalclad consisted primarily of wrapping pipes with insulation material, which included mixing dry powder and water to form the "mud" used to seal the pipe joints. The dry powder, he said, contained asbestos, and mixing it with the water caused dust to go into the air, making him cough. He estimated that he handled close to a half ton of this material while employed by Metalclad. He also testified his job required him to cut insulation pipe with a hand saw, causing dust to go into the air.

A company manager testified that 98 per cent of claimant's work with Metalclad was on "commercial" jobs, in which 90 per cent of the materials used were fiberglas. In the other 10 per cent, a 3 per cent asbestos material was used. In relation to this testimony the hearing officer concluded: "any exposure to asbestos that claimant may have experience [sic] with this employer had nothing to do with either the etiology of the disease or the commencement of the disability * * *."

The medical review board made the following findings pursuant to the questions enumerated in ORS 656.812:

"1. Does claimant suffer from an occupational disease or infection? If so, what? *Yes, asbestosis.*

"2. When was such disease or infection, if any, contracted and approximately how long has claimant suffered therefrom? *Indeterminate, but probably for at least 10 years.*

"3. Has such disease or infection, if any, been caused by and did it arise out of and in the course of claimant's regular actual employment in such industrial process, trade or occupation? *Yes.*

"4. Is such disease, if any, disabling to the claimant? *Yes.*

"5. If so, to what degree is claimant disabled by such occupational disease? *Permanently and totally disabled as regards returning to his former occupation.*"

To these the board attached a report in which the following comments were made.

"* * * If the diagnosis of asbestosis had been made in 1968 or 1969, it would have been made during the patient's long employment with the Bartells Company, for whom he had worked for nearly 20 years.

"The Board has no doubts that Mr. Mathis has asbestosis, as a cumulative result of years of employment in his trade. It is not medically probable that clinically significant exposure to asbestos occurred during the four months employment in 1970 at Metalclad. Some minimal degree of inhalation of asbestos fibers probably did occur during this employment, in spite of the small proportion of asbestos in the materials used and the safety precautions which were taken. Exposure to asbestos in years past with a different employer was no

doubt far more important in the causation of his disease * * *."

■ (1). The principal issue on appeal is: To what extent, if any, must the last employment of a workman disabled by an occupational disease cause or contribute to the disease in order to make the employer liable for the disability?

Defendant takes the position that the employment must be a "material contributing cause" of the disease, a standard used in accidental injury cases. Claimant contends the last employer should be chargeable if the employment at the time of disability was "of a kind contributing to the disease," which generally represents the rule in other jurisdictions. Neither party cites controlling Oregon case authority and we find no legislative history which aids us. The Occupational Disease Law was enacted as Oregon Laws 1943, ch 442, and has remained relatively unchanged since that time.

Before examining the statutes, which are largely silent on the question before us, it is helpful to turn to the general law. In his treatise on workmen's compensation Larson states the rule applicable to carrier liability (which is handled in the same manner as employer liability) where there has been successive exposure to conditions contributing to an occupational disease.

> "*In the case of occupational disease, liability is most frequently assigned to the carrier who was on the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease.* It will be observed that, in broad outline, this is comparable to the 'last injurious exposure' rule discussed in the previous subsection, except that it places more stress

on the moment of disability. Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date * * *.

*"Among the conditions to which this rule has been applied are asbestosis,* silicosis, pneumoconiosis, tuberculosis, dermatitis, occupational loss of hearing, and various diseases produced by inhalation of chemicals and fumes.

*"It goes without saying that, before the last-injurious-exposure rule can be applied, there must have been some exposure of a kind contributing to the condition.* So, if a silicosis claimant had been transferred to outside work or to work in a place where dust conditions were not harmful, the carrier on the risk during the later period will not be held liable. *But, once the requirement of some contributing exposure has been met, courts applying this rule will not go on to weigh the relative amount or duration of the exposure under various employers and carriers.* As a result, in some cases carriers and employers that have been on the risk for relatively brief periods, perhaps only a few weeks, have nevertheless been charged with full liability for a condition that had developed over a number of years." (Emphasis supplied.) 3 Larson, Workmen's Compensation Law § 95.21 (1971).

The "last injurious exposure" rule spoken of by Larson is simply that in successive *injury* cases, full liability is placed upon the carrier covering the risk at the time of the most recent injurious exposure which bears a causal relation to the disability. Larson, supra § 95.12. Some states have by statute qualified the application of the "last injurious exposure" or "time of disability" test for *occupational disease* claims by limiting its application to the last employer in whose employment the claimant was for a minimum period of time; for example, 60 days has been speci-

fied in Illinois, Ill Ann Stat ch 48, § 172.36 (1969), and six months in Pennsylvania, 77 PS § 1401 (Supp 1972). *See generally* Larson, supra § 95.24. Other states by statute establish the requisite contribution that the employment must have to the disease before the employer is liable; in West Virginia the exposure must *perceptively aggravate* claimant's condition. West Virginia Code § 23-4 (1970). California has provided, first by judicial decision, *Colonial Ins. Co. v. Industrial Acc. Com.*, 29 Cal 2d 79, 172 P2d 884 (1946), and then by statute, Cal Labor Code § 5500.5 (West 1971), a rule for apportionment of liability among employers contributing to the disability in occupational disease cases. In states without such specific statutory provisions, the general rule quoted above prevails.

We now turn to Oregon's Occupational Disease Law which to a great extent lacks the statutory refinements mentioned above. The definition of "occupational disease" in ORS 656.802(1)(a) gives no indication of whether Oregon aligns with the general rule. It defines occupational disease as:

> "Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

However, in specifying the time limitations for filing occupational disease claims, the legislature set the outside limitation at "within three years after the *last exposure* in employment subject to the workmen's compensation law * * *." (Emphasis supplied.) ORS 656.807. Similar limitations on recovery for silicosis, which is treated separately, set the time period at three years after the *"last injurious exposure."* (Em-

phasis supplied.) ORS 656.816. The time which marks the beginning of the 180-day period for filing occupational disease claims is "the date the claimant becomes disabled or is informed by a physician that he is suffering from an occupational disease whichever is later." ORS 656.807. These statutory provisions appear to support claimant's contention that Oregon aligns with the general rule outlined in Larson, supra.

■ Defendant's contention that the employment must be a "material contributing cause" of the occupational disease stems from a line of Oregon authority applying such a standard to *accidental injury* cases. *Lemons v. Compensation Department,* 2 Or App 128, 467 P2d 128 (1970); *Lorentzen v. Compensation Department,* 251 Or 92, 444 P2d 946 (1968); *Olson v. State Ind. Acc. Com.,* 222 Or 407, 414, 352 P2d 1096 (1960). These cases involve the aggravation of pre-existing physiological weakness by an *accidental injury,* and thus are not in point. Of course, the Occupational Disease Law is not independent of the Workmen's Compensation Act, and when consistent with the general policy of the Act, it should be construed harmoniously. *See,* for example, *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 512, 469 P2d 25 (1970). For the reasons that follow, though, we are persuaded that the Occupational Disease Law is sufficiently distinguishable in this instance to warrant departure from the "material contributing cause" standard adopted in cases under the accidental-injury portion of the Workmen's Compensation Act.

As Larson comments in the section quoted above, occupational disease, unlike accidental injury disability, typically shows a long history of injurious exposure without actual disability. Because the date

of actual contraction of an occupational disease, such as asbestosis, is not susceptible to positive demonstration, most, if not all, states specify the date of disability rather than the date the disease was actually contracted for fixing the relative rights and liabilities of the workman and employer. *See generally,* Larson, supra § 95.21. Oregon law is in accord. ORS 656.807(1). The merit of this approach lies in its definiteness.

This definiteness is a virtue which the rule defendant urges does not have. To illustrate: a workman employed in the asbestos trade with three different employers for three years each, and disabled at the end of the third year with the last employer, would have to make a determination before he filed his claim against the last employer of whether the last employment constituted a "material contributing cause" of his disability. If his determination proved incorrect upon hearing and review by the medical board, his right to proceed against the next to last employer might be barred because of the requirement that claims be filed "within three years of the last exposure in employment subject to the workmen's compensation law * * *." ORS 656.807(1). Such prejudice would not likely arise under the accidental-injury section of the Workmen's Compensation Act because there the pre-existing condition is usually not compensable independent of the subsequent, precipitating injury.

The realities of occupational diseases also cut against adoption of the "material contributing cause" standard. As noted above, because the date of actual contraction of an occupational disease is difficult to demonstrate, the possibility arises that the exposure to injurious substances by a later employment may

have little causal effect on the workman's disability. This is particularly true with lung diseases such as asbestosis. Asbestosis has been recognized by some medical authorities as a progressively disabling disease, which once contracted would not be aggravated by subsequent exposure to asbestos dust. *See, Northwestern A. & C. Co. v. Industrial Comm.,* 21 Wis2d 554, 124 NW2d 628, 629-30 (1963). Accepting this proposition, adoption of the rule defendant urges would bar recovery for a workman who had worked for one employer a sufficient amount of time to contract asbestosis and then changed to another employer, in whose employ he subsequently became disabled after working more than the statutory period of limitation— three years. The latter employment could not be considered a "material contributing cause" of the disease since the disease had been contracted previously; the previous employer could not be held liable because of the statutory period for filing claims.

■ The potential inequity of such a rule demonstrates that the adoption of the general rule, as illustrated by *Gregory v. Peabody Coal Company,* 355 SW2d 156 (Ky 1962), better effectuates a result harmonious with the policy of the Workmen's Compensation Act.⊗ In that case claimant had worked for A for 30 years, and B, the defendant, for only 25 days. Both employments exposed him to injurious dust, although his employment with A marked the time when pneumoconiosis was contracted. The court held B

---

⊗ Our decision here takes into account language in Livingston v. State Ind. Acc. Com., 200 Or 468, 472, 266 P2d 684 (1954):

"* * * [T]he provisions of the Workmen's Compensation Law should be interpreted liberally in favor of the workman, and particularly should this be so * * * with a 'borderline case' * * *."

solely liable, quoting the controlling principle from a prior case:

> " '* * * [I]t is not required that the employe prove he *did* contract silicosis in his last employment, but only that the conditions were such that they could cause the disease over some indefinite period of time.' " 355 SW2d at 158.

Adoption of the general rule works hardship on the employer who contributes a very slight amount to the claimant's disability but is made to bear the full financial responsibility.[⊕] The same could be said for minor injuries which aggravate pre-existing conditions, thus making the last employer liable for the complete disability under the accidental injury portion of the Workmen's Compensation Act. In the latter situation the legislature has afforded some relief through the Second Injury Reserve, ORS 656.622. Thus, defendant's contentions of the harshness of the general rule should be directed to the legislature. The statutes we have cited above which have refined the occupational disease laws of other states suggest possible legislative solutions.

■ From the findings of the medical review board, *supra*, we hold there is sufficient evidence to support the general rule requirement that the conditions of the last employment were such that they could cause asbestosis over some indefinite period of time. Accordingly, we affirm the trial court order.

■ (2). Defendant raises two objections as to the manner in which claimant brought the case before the

---

[⊕] The legislature has specifically provided that an employer may require a pre-employment medical examination, ORS 656.806, thus affording employers some measure of protection against the possibility of hiring a worker with an occupational disease in its advanced stages.

circuit court. Under the Occupational Disease Law findings of fact by the medical review board are not reviewable; legal issues are. In this context, the court in *Beaudry v. Winchester Plywood Co.*, 255 Or 503, 469 P2d 25 (1970), made the following statement upon which defendant grounds its initial objection:

"* * * *We believe the better practice is to require specification in the original notice of appeal [to the circuit court] of all questions to be subsequently considered.* The party prevailing before the hearing officer will then be able to terminate the appeal without further proceedings by a motion to dismiss, if the matters sought to be appealed are not within the cognizance of the circuit court but are within that of the medical board of review * * *." (Emphasis supplied.) 255 Or at 510.

In the case at bar claimant did not specify the question of law to be considered by the circuit court, which defendant argues requires reversal. In fact, no notice of appeal was filed in the circuit court. The record does not reflect that defendant raised either issue before the circuit court. However, the matter warrants clarification, for as the Supreme Court noted in *Beaudry*: "* * * To say the least, the occupational disease law is not a masterful job of statutory drafting * * *." 255 Or at 516.

■ In *Beaudry* the underlying assumption in the court's discussion of the need for specifying legal issues for the circuit court was that the party rejecting the hearing officer's order *files a notice of appeal* to the circuit court for questions not within the cognizance of the medical review board, i.e., "an issue of the timeliness of filing a claim or other legal issue," ORS 656.810(4). The Occupational Disease Law does

152

not appear to require a notice of appeal[9] although such a notice is required for all other compensation appeals. ORS 656.298. As a matter of procedure, a notice of appeal, specifying the legal issues, is a necessity.

In the case at bar claimant filed a "Rejection of Order" with the Workmen's Compensation Board, which stated:

> "The Claimant rejects the Opinion and Order of the Hearing Officer on the above case entered on June 23, 1971.
>
> "Claimant also rejects that portion of the Hearing Officer's Opinion and Order in which it is held that claimant did not establish legal-causal relationship connecting this workman's asbestosis with his employment for this employer, and requests that the Workmen's Compensation Board certify the claim record to the Circuit Court under the provisions of ORS 656.810(4)."

Pursuant thereto, the board did certify the record to the circuit court and subsequently *defendant* filed in the circuit court a "Specification of Legal Issue."

■ We believe a more appropriate procedure is for the party rejecting the hearing officer's order on a legal issue to file a notice of appeal including a specification of legal issues. The party opposing the appeal

---

[9] ORS 656.808 states that a rejection of the hearing officer's order acts as an appeal to *the medical review board;* no such automatic appeal exists for appeal of legal issues to the circuit court. It seems logical that the rejecting party would have to file an appeal, although ORS 656.810(4) makes it appear that the Workmen's Compensation Board's certification of the record to the circuit court institutes the appellate review. Since the appealing party usually designates the alleged errors committed by the lower tribunal, e.g., ORS 656.298(3)(d), this implication from ORS 656.810(4) that the board somehow institutes the appeal to the circuit court seems anomalous.

should not initially attempt to frame the issues on appeal. However, because of the lack of clarity in the statutory procedure, the apparent failure of defendant to raise these procedural issues before the circuit court, and absence of effect of the questionable procedure on the substantive issue of the case, we will not enforce the requirement set out above in the case at bar. We invite the legislature's attention to the obvious need for clarification in this area.

■ Defendant's second objection to the appeal misconceives the principal issue in the case. Defendant argues that the issue of causation is one of fact, not reviewable by the courts under ORS 656.814. Here, the issue of causation involves a mixed question of fact and law; the legal aspect, discussed above, is therefore properly reviewable.

Affirmed.