Argued January 17, affirmed March 10, reconsideration denied
April 9, petition for review denied April 22, 1975

## DAVIDSON BAKING COMPANY, *Appellant, v.*
## INDUSTRIAL INDEMNITY COMPANY ET AL
## (No. 406-177), *Respondents.*

532 P2d 810

*William L. Hallmark,* Portland, argued the cause for appellant. With him on the briefs were McMenamin, Jones, Joseph & Lang, Portland.

*Marshall C. Cheney,* Portland, argued the cause for respondent Industrial Indemnity Company. With him on the briefs were Gearin, Cheney, Landis, Aebi & Kelley, Portland.

*Dennis R. VavRosky,* Portland, argued the cause for respondent Commercial Insurance Company. With him on the briefs were McMurry & Nichols, Portland.

*Allen T. Murphy, Jr.,* Portland, argued the cause for respondent Robert M. Flick. With him on the briefs were Richardson & Murphy, Portland.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Robert M. Flick, claimant-respondent herein, completed and filed a claim of occupational injury or

disease concerning a hearing loss with the Workmen's Compensation Board in August 1973. We note this is a scheduled disability. ORS 656.214(2)(g). His claim was denied by three insurance carriers: Industrial Indemnity Company, which insured the employer from August 8, 1966 through August 7, 1969, Commercial Insurance Company, covering the employer from August 8, 1969 through August 7, 1972, and Maryland Casualty Company, which was on the risk from August 8, 1972 to October 31, 1972. Thereupon, claimant requested a hearing before the Workmen's Compensation Board. The referee concluded that claimant had suffered a compensable disability, and that Maryland Casualty Company was the responsible carrier. The Workmen's Compensation Board and the circuit court affirmed.

The facts are essentially undisputed. Claimant, 54 years old at the time of the hearing, worked for Davidson Baking Company for the 20-year period preceding the firm's demise in October, 1972. For the last 14 years he operated the bakery's cake depositor machine. The noise emanating from the device, measured at 95-96 decibels by the Department of Human Resources, could be heard two blocks away. Claimant's supervisor described it as "terrible" and enough to cause a hearing loss in anyone who operated it.

In 1965 claimant's wife noticed a decrease in her husband's hearing capacity. In early 1969, he consulted two hearing specialists. The doctors confirmed his hearing loss, and one advised him to wear ear protectors. Claimant informed his supervisor at the bakery, Mr. Dickey, that the doctors had told him the machine was causing him to lose his hearing, and that he should wear some type of ear protection.

Hearing tests conducted in 1969, 1971, and 1973 revealed a progressive deterioration in claimant's auditory acuity. However, there was a split of opinion among several examining doctors as to whether or not the loss was noise-induced. Two doctors who had the benefit of noise level data from the bakery concluded that there was a causal relationship between the cake depositor and claimant's hearing loss. A third doctor who disagreed apparently did not have access to this data. The referee described the opinion of Dr. Jack Miller in May of 1973 that there was "a probability rather than a possibility" that claimant's hearing difficulties were employment-related as "the first concrete medical evidence to claimant that his is an occupational disease." We agree.

Shortly after his August 1972 filing for disability benefits, claimant terminated his employment with Davidson due to the closure of the business. He has had no ear infections or exposure to similar noise to which his hearing loss can be attributed.

■ Aside from the issues considered below, our de novo review of the record convinces us that the referee, the Board, and the circuit court correctly concluded that claimant suffered a compensable occupational disease. ORS 656.802, 656.804.

The principal issues raised on appeal are (1) whether the claim was timely filed, and, (2) if so, which of the insurance carriers must bear the loss.

We first consider the jurisdiction of the Board to resolve a dispute such as this among insurers as to which company is responsible for satisfying an otherwise compensable claim.

Prior to 1971, ORS 656.307 read, in relevant part, as follows:

"Where there is uncertainty as to which of several subject employers, one of which is a direct responsibility employer, is the true employer of a claimant workman, the board shall, by order, designate who shall pay the claim, if the claim is otherwise compensable. Payments shall begin within 30 days after the board has been notified of the accident. When a determination of the true employer or employers has been made, the board shall direct any necessary monetary adjustment between the parties involved * * *."

In *Oremus v. Oregonian Pub. Co.,* 3 Or App 92, 470 P2d 162, Sup Ct. *review denied* (1970), we interpreted this section as expressing a legislative intent that the Board make the final determination as to which of several employers must bear the loss in cases qualifying thereunder. We said:

" * * * The board did not 'deem it necessary to decide whether the Oregonian Publishing Company might also be held to be an employer to Daniel Oremus.' We think the board should have proceeded to make this determination. The apparent purpose of ORS 656.307 is to provide for the prompt commencement of compensation payments as soon as the determination is made that the claimant suffered a compensable injury in covered employment. The statute requires that payments commence within 30 days of the Workmen's Compensation Board's notification of the accident and that the board designate initially who shall pay the claim. Having thus assured no delay in commencing compensation payments, the statute contemplates that the board then shall proceed to determine who the true employer or employers are and how much of the burden each should bear. This was not done by the board in this case." 3 Or App at 95-96.

■ The 1971 session of the legislature broadened the scope of this section to require the Board to determine an issue concerning "which of more than one insurer of a certain employer is responsible for payment of compensation to a workman." Oregon Laws 1971, ch 70, p 91. Since this case is otherwise within the scope of ORS 656.307, we hold that the Board had jurisdiction to make a determination as to which of the employer's insurers was responsible for this claim.

We proceed to the remaining issues of carrier responsibility and timeliness of the claim. ORS 656.-807(1) provides:

" * * * [A]ll occupational disease claims shall be void unless a claim is filed with the State Accident Insurance Fund or direct responsibility employer within five years after the last exposure in employment subject to the Workmen's Compensation Law and within 180 days from the date the claimant becomes disabled or is informed by a physician that he is suffering from an occupational disease *whichever is later.*" (Emphasis supplied.)

■ In *Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972), a workman who had been exposed to asbestos from 1939 to 1970 in the course of several employments sought compensation for the occupational disease asbestosis. Although he had worked for his last employer only four months before being advised by a doctor to terminate asbestos-related work, we held such last employer liable for the disability. In *Mathis* we adopted the rule as set forth in 3 Larson, Workmen's Compensation Law § 95.21 (1971), stating:

" * * * In his treatise on workmen's compensation Larson states the rule applicable to carrier liability (which is handled in the same manner as employer liability) where there has been successive

exposure to conditions contributing to an occupational disease.

> " 'In the case of occupational disease, liability is most frequently assigned to the carrier who was on the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease. It will be observed that, in broad outline, this is comparable to the "last injurious exposure" rule discussed in the previous subsection, except that it places more stress on the moment of disability. Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date * * *.
>
> " ' * * * * * *
>
> " 'It goes without saying that, before the last-injurious-exposure rule can be applied, there must have been some exposure of a kind contributing to the condition. * * * But, once the requirement of some contributing exposure has been met, courts applying this rule will not go on to weigh the relative amount or duration of the exposure under various employers and carriers. As a result, in some cases carriers and employers that have been on the risk for relatively brief periods, perhaps only a few weeks, have nevertheless been charged with full liability for a condition that had developed over a number of years.' (Emphasis supplied.) 3 Larson, Workmen's Compensation Law § 95.21 (1971)." 10 Or App at 144-45.

We adhere to that rule.

Appellant's arguments for not applying the rule in *Mathis* to the instant case are not persuasive. It urges that because claimant's cessation of work resulted from the employer's bankruptcy rather than

his hearing loss, the rule is not applicable and liability should be apportioned among the carriers.

This court has previously rejected the concept of apportionment between carriers. *Cutright v. Amer. Ship Dismantler,* 6 Or App 62, 486 P2d 591 (1971). Nothing in the 1971 Oregon Laws amendment or its legislative history warrants a departure from that rule. In *Cutright* we said:

> "At oral argument employer's counsel argued that at the least the recovery of compensation should be apportioned between SAIF and the direct responsibility carrier. We were not cited and we find no satisfactory authority providing for apportionment between carriers in the Workmen's Compensation Act or in case law." (Footnote omitted.) 6 Or App at 64-65.

■ Moreover, to hold that a disability from an occupational disease may mature in stages would place an unfair burden on the workman with respect to the timely filing of claims. *See* ORS 656.807(1). This would be inconsistent with the rule that our Workmen's Compensation Law is to be liberally interpreted in favor of the workman. *Livingston v. State Ind. Acc. Com.,* 200 Or 468, 472, 266 P2d 684 (1954); *Mathis v. SAIF,* supra, 10 Or App at 149.

■ Accordingly, we hold that the responsible insurer here was determined by the time of claimant's last injurious exposure to the cake depositor. It follows therefrom that the claim was timely filed under ORS 656.807(1).

Affirmed.