475 A.2d 1168

Lucille P. LOWERY, Ind., and as Personal Representative of the Estate of George W. Lowery, Deceased

v.

McCORMICK ASBESTOS COMPANY.

No. 119, Sept. Term, 1983.

Court of Appeals of Maryland.

June 6, 1984.

Bernard M. Goldstein, Baltimore (William D. Kurtz, Baltimore, on the brief), for appellant.

R. Roger Drechsler and Lord, Whip, Coughlan & Green, P.A., Baltimore, on the brief, amicus curiae for Wallace and Gale Co.

Russell D. Karpook, Towson (William F. Mosner and Power & Mosner, Towson, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and ALBERT W. MENCHINE, Retired, Specially Assigned Judge.

W. ALBERT MENCHINE, Retired, Specially Assigned Judge.

Lucille P. Lowery, as widow and personal representative of George W. Lowery, instituted an action in the Superior Court of Baltimore City (now Circuit Court for Baltimore City) against McCormick Asbestos Company and fourteen other corporations for negligence and strict liability in tort.

The declaration was in four counts—the first and second as surviving widow against each defendant for negligence and for strict liability in tort respectively—the third and fourth as personal representative of the decedent against each defendant for negligence and for strict liability in tort.

The gravamen of the action was that each defendant, as manufacturer, fabricator, distributor, supplier and seller of asbestos and asbestos products reaching the decedent without substantial change, knew or should have known of the danger inherent in exposure to such products yet failed to warn decedent of such danger *as a result whereof decedent, in the course of his employment as an asbestos insulator in Maryland and other states from 1935 to 1975, was exposed to such danger and thereby was caused*

*to suffer painful and debilitating illness in June 1980, directly causing his death on February 14, 1982.* Gross negligence was alleged in both personal representative counts and punitive damages were claimed therein.

McCormick Asbestos Company, one of the defendants, filed a motion for summary judgment supported by affidavit that George W. Lowery, the decedent, was its employee during four employment periods, *i.e.*, from July 20 to July 27, 1943; April 2 to July 30, 1950; June 12 to November 15, 1962; and March 1 to April 26, 1970, and it had complied with the provisions of the Workmen's Compensation Act during all such periods of employment. The motion for summary judgment was grounded upon a contention that the decedent was its employee and that "Plaintiff's remedy against the Defendant, McCormick Asbestos Company, is limited to and is found exclusively in Article 101 of the Annotated Code of Maryland."

Responding to the motion for summary judgment, the plaintiff said:

"1. That the last employer for whom the Plaintiff worked in whose employ he sustained his last injurious exposure to asbestos dust was Wallace & Gale.[1]

2. That although Plaintiff did work at times for the Defendant, McCormick Asbestos Company, McCormick would not be responsible under the compensation scheme therefore it is not immune from third party liability."

There is no allegation in the declaration and no contention is made in the response to the motion for summary judgment that the decedent was subjected to exposure to asbestos dust by McCormick Asbestos Company at any other time than during the periods of his actual employment by that company. The declaration alleges that exposure during those periods of employment was causally related to the illness and death of the decedent.

---

1. Wallace & Gale is one of the parties sued in this litigation but is not a party to this appeal.

The trial judge concluded "that the employer's compliance with the Act rather than the fact of liability for payment of compensation, triggers the exclusivity provision." The motion for summary judgment was granted and the clerk was directed to enter final judgment for McCormick pursuant to Maryland Rule 605 a.

Plaintiff appealed. We issued a writ of certiorari prior to any proceedings in the Court of Special Appeals.

The initial legislation by which specified occupational diseases were brought within the purview of the Workmen's Compensation Act (Maryland Code (1957, 1979 Repl. Vol.) Art. 101) was enacted by ch. 465, Acts of 1939. The Legislature adopted the "last injurious exposure rule" under which the date of disability was fixed as the date upon which a right to benefits would accrue [2] and liability was assigned to "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease." [3]

The title of ch. 465, Acts 1939, included *inter alia* the following description of its purpose:

"[P]roviding that occupational diseases as defined therein shall be compensable under the Workmen's Compensation Act, enumerating the occupational diseases covered, creating a Medical Board to hear and pass upon cases involving medical questions as to occupational diseases

---

**2.** Section 32B of ch. 465, Acts of 1939, now codified as Md.Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.) Art. 101 § 22(a).

Except that certain limitations and exceptions referred to in §§ 32A to 32J of the Act have been entirely eliminated from the law, the language of the section has been retained through multiple amendments. Exceptions referring to Sections 54, 56 and 65 (now codified as §§ 52, 56 and 67) relate respectively to compromise and settlement, appeals, and definitions. None has any materiality to the subject case.

**3.** Section 32C of ch. 465, Acts of 1939, now codified as Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.) Art. 101 § 23(b).

Except that limitations and exceptions relating to silicosis or asbestosis have been eliminated entirely by later amendments, the language of this section has been retained without change.
•

and prescribing its duties and powers, relating to appeals in cases involving occupational diseases, *providing that 'injury', 'personal injury', and 'accidental personal injury' shall include the occupational diseases enumerated ....*" (Emphasis added.)

Neither the initial Occupational Disease Act, nor the subsequent amendments which provided complete. coverage for all occupational diseases and increased the benefits therefor, changed any of the exclusivity provisions of the Workmen's Compensation Act.

Nevertheless,. appellant contends that "under the facts of the instant case McCormick was a stranger to any compensation proceedings and was outside the coverage of the Act. And in Section 58 of the Act, providing for third party suits against 'some person other than the employer' the reference is clearly to persons other than the employer liable under the Act to provide compensation."

Otherwise stated, appellant's contention is, that by adopting and retaining the last injurious exposure rule the Legislature implicitly amended the exclusivity provisions of the compensation act in occupational disease cases so that all causal employers other than the last are amenable to suit as third party tortfeasors under Art. 101, § 58.[4]

In *Osteen v. A.C. & S., Inc.,* 209 Neb. 282, 307 N.W.2d 514 (1981), the Supreme Court of Nebraska, faced with a silent statute, said:

---

**4.** At the time of the passage of ch. 465, Acts of 1939, what is now Section 58, was codified as Section 72. The language of the present Section 58 in the part here pertinent is identical with Section 72, and reads as follows:

"§ 58. When third party liable.

"Where injury or death for which compensation is payable under this article was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee, or in the case of death, his personal representative or dependents as hereinbefore defined, may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in case of joint tortfeasors against both ...."

"Appellant next argues that the Workmen's Compensation Court erred in applying the so-called 'last injurious exposure' rule to determine which employer should bear liability for payment of the award. According to this rule, where a worker has contracted an occupational disease by exposure to a harmful substance over a period of years in the course of successive employments, the employer who most recently exposed the worker to the harmful substance is liable to pay the entire award. 4 Larson, Workmen's Compensation Laws § 95.21 (1981). In some states, this rule is codified by statute." 307 N.W.2d at 518.

Maryland is such a state. Article 101, §§ 22(a) and 23(b). In *Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 442 A.2d 980 (1982), Judge Rodowsky, speaking for this Court said:

"The General Assembly has chosen the time when disability results from an occupational disease as the point at which the disease becomes compensable....

\*   \*   \*   \*   \*   \*

"... But it is the employer in whose employment the employee was last injuriously exposed to the hazards of the occupational disease, and the insurance carrier on the risk at that time, who are liable for the compensation." 293 Md. at 201–02, 442 A.2d at 982.

The Court in *Osteen v. A.C. & S., Inc.* went on to say: "[I]t is almost impossible to pinpoint which exposure 'caused' the disease, since the claimant's expert medical witnesses agreed that no exposure to asbestos could be exonerated as the cause of the tumor. Thus, we are unable to assign liability to the employer whose exposure of Mr. Osteen to asbestos 'caused' his occupational disease, since the inception of the disease cannot be pinpointed and, additionally, since it is believed that cumulative exposures are harmful as well. The application of the last injurious exposure rule eliminates this guesswork. As stated in *Tennessee Tufting Co. v. Potter*, 206 Tenn.

620, 630, 337 S.W.2d 601, 602 (1960), a case from a state where this rule is statutory, the purpose of the rule is 'to avoid the issue when the disease or disability came into existence, which issue often involves difficulty, uncertainty and speculation.' " 307 N.W.2d at 519.

The "last injurious exposure rule" was not new when the Legislature adopted it as the law of Maryland. Its purpose and effect was the subject of judicial discussion years before its enactment in Maryland. In Wisconsin, occupational diseases were brought within the purview of the Workmen's Compensation Act in 1919.[5] The initial Wisconsin statute lacked a provision fixing with specificity a date that triggered the respective rights, duties and responsibilities of employer and employee in occupational disease cases.

In *Employers Mut. Liability Ins. Co. v. McCormick*, 195 Wis. 410, 217 N.W. 738 (1928), the Wisconsin Supreme Court observed that the general provisions of the Workmen's Compensation law provided a definite date—that of the accident—for the determination of the respective rights, duties and obligations of employers and employees but that the inception of occupational disease admitted to no such definitive basis for such determination. The Court filled the void in the Wisconsin occupational disease statute by fixing the date of disability as the determinant of a right to compensation benefits and adopting, as judicial doctrine, the last injurious exposure rule to impose liability solely upon the last causal employer. The Court thus explained its decision:

"Unless the date when the employee is disabled from rendering further service be taken as the date that determines liability, it will be very difficult to administer the Workmen's Compensation Act so far as disability resulting from occupational disease is concerned. The protection of the rights of both the employer and the employee

---

5. Ch. 668, Wis. Legislature Acts (1919).

requires that liability be fixed as of that date. If liability must be determined as of the date when the disease had its inception, the employee would be under the necessity of giving notice of every slight ailment, which might be the incipient stage of some occupational disease that might cause disability at some more or less distant future time, and the employer would be put to the needless expense of investigating all such notices of claims.

"Unless the Workmen's Compensation Act be construed to permit the giving of notice of claim for compensation for disability resulting from occupational diseases within 30 days from the date of disability, employees who are entitled to compensation because of disability caused by such diseases might find their claims barred by the failure to give this 30-day notice, because the inception and progress of most occupational diseases is insidious and slow. Their inception would be a matter difficult to determine, and must in most cases be left to the opinion of experts who can never have definite knowledge as to the date when the disease had its inception." 195 Wis. at 414–15, 217 N.W. 738.

The Court in *Employers Mutual*, manifestly conscious of the heavy burden of liability arbitrarily assigned by the rule solely upon the last causal employer, explained why the rule did no affront to fundamental fairness, saying:

*"This rule will work no injustice to any individual carrier or employer, because the law of averages will equalize burdens imposed by this act among the employers* and the compensation insurers of the state." 195 Wis. at 415–16, 217 N.W. 738 (emphasis added).

The Wisconsin Legislature subsequently incorporated the judicial doctrine within the Workmen's Compensation Statute.[6]

It is beyond question that the last injurious exposure rule, arbitrarily imposed upon the last causal employer, if con-

---

6. Wis.Stat.Ann. § 102.01 (West 1982).

sidered in the context of its application to a single case, is frequently unfair to employers as the following will illustrate: *Willingham v. Bryan Rock & Sand Co.*, 240 N.C. 281, 82 S.E.2d 68 (1954) (Sole liability assigned to last injurious exposure employer for whom claimant worked only 4½ months. The claim against the employer for whom he worked 15 to 20 years was dismissed.); *Gregory v. Peabody Coal Co., et al.*, 355 S.W.2d 156 (Ky.1962) (Sole liability assigned to last exposure employer for whom claimant worked only 25 days. The claim against the employer for whom he worked 30 years was dismissed.). Decisions in jurisdictions adhering to the rule have made it quite clear, however, that it must not be considered in such a context.

In *Travelers Insurance Co. v. Cardillo*, 225 F.2d 137 (2nd Cir.1955), *cert. denied*, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955), the court adopted the "last injurious exposure rule" as a judicial doctrine applicable to the silent Longshoremen and Harborworkers Act, 33 U.S.C.A., § 901 *et seq.* (1979), saying:

"Every claim based upon occupational disease would be barred if the one year limitation period were declared to begin running when contact is first had with the condition causing the disease or when the disease first ensues. At such a time, a potential claimant would have no occasion to realize that there is anything wrong with him, much less that he had suffered damage industrially caused." 225 F.2d at 143.

Judge Medina for the Court then pointed out that in the course of the Act's passage Congress had been made aware that the Act contained no provision limiting the proportion of the total award for which a particular employer could be held liable and that absent such a provision a "last employer" could be liable "even if the length of employment was so slight that medically, the injury would, in all probability, not be attributable to that last employment." 225 F.2d at 145 (footnote omitted). Pointing out that Congress declined to amend, Judge Medina observed:

"[I]t would seem a fair inference that the failure to amend was based upon a realization of the difficulties and delays which would inhere in the administration of the Act, were such a provision incorporated into it. Thus we conclude that the Congress intended that the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award." *Id.* at 145.

*Accord Cordero v. Triple A Machine Shop,* 580 F.2d 1331 (9th Cir.1978), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979), wherein it was contended, *inter alia,* that the due process rights of the last employer "are violated by assessing full disability liability against the last employer." 580 F.2d at 1336. Rejecting the contention, the Court cited with approval *Travelers Ins. Co. v. Cardillo,* and said:

"There, the court noted that administrative convenience made the last employer doctrine legally acceptable. *The underlying rationale is that all employers will be the last employer a proportionate share of the time.* In arriving at its decision, the *Cardillo* court fully examined the legislative history of the Act and held that this concept was allowable." *Id.* at 1336 (emphasis added).

*See also Osteen v. A.C. & S., Inc.,* wherein the Supreme Court of Nebraska, affirming the judgment of that state's Workmen's Compensation Court, quoted with approval from that court's opinion: " '[E]ven though liability imposed under this rule can have a harsh result, there will be a spreading of the risk when the total picture of asbestos litigation is considered and this rule is applied on a nationwide basis.' " 307 N.W.2d at 520.

In *Mathis v. State Accident Insurance Fund,* 10 Or.App. 139, 499 P.2d 1331 (1972), the intermediate appellate court of Oregon, after pointing out that asbestosis is not readily susceptible to evidence demonstrably fixing the date of

38

contraction of the disease or providing guidance for allocation of liability as between causative employers, adopted the "last injurious exposure rule" as judicial doctrine. The Court observed that adoption of any other rule would require a disabled claimant to choose among multiple causative employers—perhaps to the defeat of a valid claim.

In *Inkley v. Forest Fiber Products Co.*, 288 Or. 337, 605 P.2d 1175 (1980), the Supreme Court of Oregon approved the holding in *Mathis, supra.* After noting that claimants in multiple employer situations need to know against which employer or carrier to file a claim, the court rejected the "causality rule" and declared:

"In the multiple employer situation, however, such a 'causality rule' would expose the claimant to the risk of no recovery, if his initial judgment as to which job had the strongest causal relation to his illness proved faulty.

"The inequity of denying a disabled worker his benefits under the statute because he mistakenly filed against the wrong employer influenced the Court of Appeals [in *Mathis*] to adopt the last injurious exposure rule. Under the rule an occupational disease claimant must show that his condition arose 'out of and in the scope of the employment,' ORS 656.802(1)(a), *but he need not meet the often impossible burden of showing that workplace conditions at a specific time and place caused or materially aggravated his condition.* The rule requires that claimant to show only that the employment environment during the relevant period *could have* been a contributory cause of the disease. That question is more susceptible to proof in a WCB proceeding than is the question of whether the workplace did cause the disease." 288 Or. at 343–44, 605 P.2d 1175 (emphasis added).

In the later case of *In re Compensation of Bracke*, 293 Or. 239, 646 P.2d 1330 (1982), the Supreme Court of Oregon discussed in greater depth the rationale of its judicially adopted "last injurious exposure rule":

"The Workers' Compensation Act makes no provision for allocation of liability among employers. It is desirable in occupational disease cases to designate an identifiable event for the assignment of liability, analogous to accidents in injury cases, to reduce uncertainty....

"... The last injurious exposure rule of proof more typically applies where one employment caused the disease, but more than one could have. By arbitrarily assigning liability to the last employment which could have caused the disease, the rule satisfies claimant's burden of proof of actual causation. The reason for the rules lies not in their achievement of individualized justice, but rather in their utility in spreading liability fairly among employers by the law of averages and in reducing litigation.

*    *    *    *    *    *

"The operation of the rule, as we said in *Inkley*, provides certainty in a way which is 'somewhat arbitrary.' It operates generally for the benefit of the interests of claimants. It is fair to employers only if it is applied consistently so that liability is spread proportionately among employers by operation of the law of averages. We hold that employers have and may assert an interest in the consistent application of the last injurious exposure rules, either as to proof or liability, so as to assure that they are not assigned disproportionate shares of liability relative to other employers who provide working conditions which generate similar risk." 646 P.2d at 1335–37 (footnotes omitted).

In 4 Larson, *Workmen's Compensation Law*, § 95.21 pages 17–82 to 17–86 (1981), the author puts in capsule form the advantages stemming from the rule's adoption:

"Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date. In the search for an identifiable instant in time which can perform such necessary functions as to start claim periods

running, establish claimant's right to benefits, determine which year's statute applies, and fix the employer and insurer liable for compensation, the date of disability has been found the most satisfactory. Legally, it is the moment at which the right to benefits accrues; as to limitations, it is the moment at which in most instances the claimant ought to know he has a compensable claim; and, as to successive insurers, it has the one cardinal merit of being definite, while such other possible dates as that of the actual contraction of the disease are usually not susceptible to positive demonstration."

We glean from the cited authorities that the last injurious exposure rule provides assurance that claimants who are disabled by an occupational disease will receive the benefits to which they are entitled by assignment of liability solely to the last causal employer. The cases emphasize, however, that the rule will be fair to employers only if applied uniformly and universally so that, under the law of averages, the burden of liability will be spread equally among all employers whose workplaces present similar hazards.

We have heretofore observed that the Legislature has never amended the specific exclusivity provisions of the compensation act. Those provisions are to be found in the preamble to the initial Workmen's Compensation Act in Maryland[7] in Article 101, § 15, that in pertinent part pro-

---

7.  The preamble to Acts 1914, ch. 800, reads as follows:

    "*Whereas, The State of Maryland recognizes that the prosecution* of various industrial enterprises which must be relied upon to create and preserve the wealth and prosperity of the State involves injury to large numbers of workmen, resulting in their partial or total incapacity or death, and that under the rules of the common law and the provisions of the statutes now in force an unequal burden is cast upon its citizens, and that in determining the responsibility of the employer on account of injuries sustained by his workmen, great and unnecessary cost is now incurred in litigation, which cost is borne by the workmen, the employers, and the taxpayers, in part, in the maintenance of courts and juries to determine the question of responsibility under the law as it now exists; and

vides that "[t]he liability ... [of an employer complying with the Act] shall be exclusive ...." and in Article 101, § 36, that in pertinent part provides that

"Each employee (or in the case of death his family or dependents) entitled to receive compensation under this article shall receive the same in accordance with the following schedule and except as in this article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever."

In *Victory Sparkler Co. v. Francks*, 147 Md. 368, 128 A. 635 (1925), this Court in commenting upon the preamble of the initial statute said: "[T]he Legislature could not have gone much further in stressing its intention to make the terms of the law exclusive within its indicated scope. Furthermore, this preliminary declaration is, in substance, incorporated in the text of the act." 147 Md. at 374, 128 A. 635. Judge Parke speaking for this Court then referred to the exclusivity provisions of the statute previously cited herein [8] and declared:

"When these various sections are considered together, in connection with the preliminary paragraphs of the act,

---

"*Whereas,* in addition thereto, the State and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, which burden should, insofar as may be consistent with the rights and obligations of the people of the State, be more fairly distributed as in this Act provided; and

"*Whereas,* the common law system governing the remedy of workmen against employees for injuries received in extra-hazardous work is inconsistent with modern industrial conditions; and injuries in such work, formerly occasional, have now become frequent and inevitable.

"*Now, therefore,* The State of Maryland, exercising herein its police and sovereign power, declares that all phases of extra-hazardous employments be, and they are hereby withdrawn from private controversy, and sure and certain relief for workmen injured in extra-hazardous employments and their families and dependents are hereby provided for, regardless of questions of fault and to the exclusion of every other remedy, except as provided in this Act."

8.  Preamble to ch. 800, Acts of 1914; Article 101, §§ 15 and 36.

*the meaning is so clear and unmistakable that it would
be a denial of the legislative purpose to strike their
plain terms from the statute by judicial construction.*
An exact parallel in facts with this case is not found in
the reported decisions of this tribunal, but whenever this
Court has spoken on any phase of this subject, it has
uniformly said that, aside from the exceptions created by
the act itself, the operation of the law is exclusive of all
other remedy and liability, with respect to both the em-
ployer and employee, engaged in hazardous employments,
in regard to all injury arising out of and in the course of
the employment. *Jirout v. Gebelein,* 142 Md. 692, 697–
699 [121 A. 831]; *Solvuca v. Ryan & Reilly Co.,* 131 Md.
265, 269 [101 A. 710], 129 Md. 235, 238 [98 A. 675];
*Hagerstown v. Schreiner,* 135 Md. 650, 653, 654 [109 A.
464]; *Adleman v. Ocean Accident & Guarantee Co.,* 130
Md. 572, 574 [101 A. 529]; *Northern Pac. R.R. Co. v.
Meese,* 239 U.S. 614, 618 [36 S.Ct. 223, 224, 60 L.Ed. 467];
*Grant Smith-Porter Ship Co. v. Rohde,* 257 U.S. 469,
476, 477 [42 S.Ct. 157, 158, 159, 66 L.Ed. 321]; *Raymond
v. Railway Co.,* 243 U.S. 43, 45 [37 S.Ct. 268, 269, 61
L.Ed. 583]; *Peet v. Mills,* 76 Wash. 437 [136 P. 685];
*Zajachuck v. Willard Storage Battery Co.,* 106 Ohio St.
538 [140 N.E. 405]; *Industrial Commission v. Brown,* 92
Ohio St. 309 [110 N.E. 744]." *Id.* at 375, 128 A. 635
(emphasis added).

In *Knoche v. Cox,* 282 Md. 447, 452–53, 385 A.2d 1179
(1978), Judge Orth speaking for the Court said:

"This Court, long past and to the present day, has
uniformly said that, aside from the exceptions created by
the Act itself, the operation of the law is exclusive of all
other remedy and liability, as to both the employer and
employee who come within the purview of the Act, with
respect to all injury arising out of and in the course of the
employment."

The language of the preamble, the body of the Work-
men's Compensation Act and the unswerving decisions of
this Court from *Victory Sparkler* to *Knoche v. Cox* empha-

size that the removal of master-servant litigation from private controversy was co-equal with the assurance of benefits to disabled workers as a basic tenet of the Act.

The case of *Farrall v. Armstrong Cork Co.*, 457 A.2d 763 (Del.Super.1983) is factually similar and the court's decisional reasoning lucid and persuasive. In *Farrall*, an action against a number of manufacturers and distributors of asbestos materials, including three former employers[9] of the husband-plaintiff during his work life, sought recovery of damages by the workman for certain pulmonary ailments suffered as a result of exposure to asbestos products and by his wife derivatively for loss of consortium.[10] The three former employers moved for summary judgment on the ground that the claims were barred by the exclusive remedy provisions of the Delaware Workmen's Compensation Act.[11] Opponents of the motion contended, *inter alia*, that immunity from suit extended only to the employer who actually pays compensation benefits.

The court granted the three employers' motion for summary judgment and in the course of its opinion said:

"Armstrong and Gale do not seriously dispute the statutorily conferred immunity enjoyed by the employer who actually pays workmen's compensation benefits, here Allied. They argue, however, that prior employers should not share immunity from contribution if they have

---

**9.** The initial action had been brought against four non-employer defendants, one of whom impleaded additional manufacturers and distributors including the three entities which employed the husband-plaintiff.

**10.** The action also included a direct claim by the wife for alleged asbestos contamination as the result of handling her husband's clothing. This aspect of the action was not affected by the decision.

**11.** 19 Del.C. § 2304 provides:
"Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies."

not responded to a compensation claim despite the employee's exposure to the occupational hazard during their respective periods of employment.

\* \* \* \* \* \*

"The exclusivity of workmen's compensation remedy in a successive employer context was the subject of an earlier ruling by this Court in another asbestos case. *Lee v. A.C. & S., et al.,* 79C–DE–125 (Unreported Decision, September 25, 1981). In *Lee,* the estate of a deceased insulation worker attempted to bring a direct wrongful death action against several employers for whom the deceased had worked during his lifetime. The argument was there asserted that only the last employer, who responded to the workmen's compensation claim, should enjoy immunity from suit. This Court held that the express immunity granted by § 2304 extended to every employer. The rationale for this ruling expressed in *Lee* bears repeating:

'The employee's remedy is deemed exclusive because it is part of the *quid pro quo* which the employee has exchanged for the coverage extended by each employer during the course of the employment relationship. When so viewed, the immunity of a particular employer does not depend on whether it responds to a claim at any particular time, so long as an entitlement to full compensation benefits is available through the response of one or more employers in the chain of employment. In essence, the adequacy of the remedy depends on the availability of complete benefits, not on the number of employers who respond.'

"In Delaware, as in most states, the employer's participation in the workmen's compensation process is statutorily required (19 Del.C. § 2306). The employer may provide benefits either directly as a self insurer (§ 2373), or through an approved compensation liability insurance carrier (§ 2372). The immunity from common law suits, \* \* flows from such participation and does not depend on the actual receipt of benefits. *Walker v. Patterson,* D.Del.,

325 F.Supp. 1024 (1971). The Act creates a 'status orient-ed' relationship. *Price v. All American Engineering Company,* Del.Supr., 320 A.2d 336, 339 (1974). It is the relationship which imparts the statutory immunity....

\* \* \* \* \* \*

"... In cases of occupational disease which may devel-op over a long period of time through a succession of employers the fixing of proportionate liability may prove difficult, if not impossible. The triggering of attempted claims against prior employers usually occurs through the employee's common law action against third parties. As a result many claims against former employers may be time-barred. Employers participate in the workmen's compensation scheme, and procure insurance to imple-ment such participation, with knowledge of the statutorily fixed benefits which they will be required to pay as the result of their individual activities. To permit that partic-ipation to be revised long after the period of employment has ended would introduce a chaotic result....

\* \* \* \* \* \*

"In sum, the immunity from common law suit imparted by § 2304 extends to each employer in the chain of employment whether or not such employer has responded to a claim for benefits." 457 A.2d at 766–68.

We are required to determine the purposes sought to be advanced in the adoption and retention of the last injurious exposure rule and its effect, if any, upon the exclusivity provisions of the Act in its entirety. To do so we are required to ascertain and carry out the legislative intention. In *Guardian Life Ins. v. Ins. Comm'r.,* 293 Md. 629, 446 A.2d 1140 (1982), Chief Judge Murphy speaking for this Court said:

"In so proceeding, courts are enjoined to construe stat-utes in light of the declared legislative purpose, with the meaning of the plainest language being controlled by the context. *Union Trust Co. v. Tyndall,* 290 Md. 102, 428 A.2d 428 (1981); *Dept. of Tide. Fisheries v. Sollers,* 201

Md. 603, 95 A.2d 306 (1953). In other words, statutes should be construed with a view to the original intent and meaning of the legislature, bearing in mind the cause and necessity of the enactment, and that construction is to be applied which, accords with the actual intention of the makers. *Holy Cross Hosp. v. Health Services*, 283 Md. 677, 393 A.2d 181 (1978); *Canal Co. v. Rail Road Co.*, 4 G. & J. 1, 152 (1832). Similarly fundamental is the rule that where a particular provision of a statute is part of a single statutory scheme the legislative intention must be gathered from the entire statute rather than from only one part. *In re Stephen K.*, 289 Md. 294, 424 A.2d 153 (1981); *Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 416 A.2d 734 (1980). Of course, a well-recognized counter-balancing rule is that a court must not surmise a legislative intention contrary to the plain language of a statute. *See Amalgamated Ins. v. Helms*, 239 Md. 529, 212 A.2d 311 (1965)." 293 Md. at 642–43, 446 A.2d 1140.

We have a substantial basis of knowledge relating to legislative intent in the initial passage of the Workmen's Compensation Act by which benefits for disabilities from accidental injuries arising out of and in the course of employment were provided.

We know that the Legislature thought that industrial disabilities under the rules of the common law and the statutes antecedent to enactment of the Workmen's Compensation Act cast "an unequal burden" upon the citizens of Maryland; made determination of the responsibility of the employer on account of such injuries the subject of "great and unnecessary cost" in litigation and subjected the taxpayers to a "heavy burden" that should be "more fairly distributed." We know also that passage of the Workmen's Compensation Act was intended to withdraw extra-hazardous [12] employments "from private controversy"; to provide

---

**12.** Current provisions of workmen's compensation laws apply to substantially all employments, whether hazardous or not. See Article 101, § 21.

"sure and certain relief for workmen injured" in such employments and "their families and dependents," "regardless of questions of fault and to the exclusion of every other remedy, except as provided in this Act." [13]  (Preamble, ch. 465, Acts of 1939).

We know that the title to the initial Occupational Disease Act (ch. 465, Acts of 1939) contained the following language: "An Act ... providing that occupational diseases as defined therein shall be compensable under the Workmen's Compensation Act ...."

We believe that the legislative purpose in the passage of the initial Occupational Disease Act (ch. 465, Acts of 1939) was to bring within the purview of the Workmen's Compensation Act disability caused by specified occupational diseases produced by the workplace environment without change in the basic social aspects of the law and we attribute to the 1939 Legislature the same high ideals and the same high social aims that motivated the Legislature of 1914.

It is plain that the Legislature was aware of the inherent difference between disability produced by accidental injury—with a fixed date of occurrence—and that produced by the more insidious occupational disease—the inception of which most frequently is clouded and the disabling effect of which may occur years after its commencement. The Legislature made specific provision for that inherent difference: (1) by fixing the date of disablement as the accrual date of a worker's right to benefits (ch. 465, Acts of 1939, § 32B;

---

13.  There were but two exceptions to the statute's exclusivity provided in the passage of the initial Workmen's Compensation Act (ch. 800, Acts of 1914), namely:
   1.  "[I]f an employer fail[s] to secure the payment of compensation for his injured employees and their dependents ...." § 14 (now § 15).
   2.  "If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death ...." § 44 (still § 44).
   No additional exceptions have been carved from the law in the succeeding seventy years.

now Article 101 § 22(a)), and (2) by assigning liability for benefits to that employer in whose employment the disabled worker was last injuriously exposed to the hazards of the disease (ch. 465, Acts of 1939, § 32C, now Article 101 § 23(b)).

We shall examine the effect of legislative adoption and retention of the last injurious exposure rule in the light of those high ideals and social aims, first as explicated by the cases cited, and secondly as suggested by appellants.

The last injurious exposure rule, as explicated by the cases discussed, is in full harmony with the stated aims of the Legislature in the enactment of the Workmen's Compensation Laws of Maryland in that

(1) It provides greater likelihood for "sure and certain relief" to workers disabled by occupational diseases:

    (a) By fixing a date certain for the timely filing of required notices and claims; thereby lessening defeat of a valid claim.

    (b) By eliminating the often impossible burden of proving medical causation of the disease to a particular workplace.

    (c) By improving administration of the Act by eliminating delays inherent in disputes among employers relating to apportionment or allocation of liability; by shortening and simplifying hearings in disputed cases; and by decreasing legal and investigative expense.

(2) It provides fair distribution of the heavy burden [14] of occupational disease coverage by spreading liability

---

**14.** The magnitude of the burden cast by the Act in occupational disease cases is explained by Judge Rodowsky for this Court in *Shifflett v. Powhattan Mining Co.,* 293 Md. 198, 442 A.2d 980. In that case the claimant became disabled 16 years after his last exposure to asbestos dust in early 1959. Judge Rodowsky, for this Court, said:

"We hold that the total amount of an award of compensation for permanent total disability from silicosis, asbestosis, or other pulmonary dust disease under Code (1957, 1979 Repl.Vol.), Art. 101, § 24(b) is determined by reference to the ceiling provided in

among all employers on the theory that all causal employers will be last causal employers a proportionate share of the time.

The effect of the last injurious exposure rule under appellant's contention, on the other hand, runs counter to those declared purposes. It would mean that in every occupational disease case involving multiple employers—and the nature of occupational diseases would make their number myriad—*every causal employer would be put at risk.* The *last*, arbitrarily assigned a disproportionate burden for his causative contribution to disability, would be required to pay the totality of benefits resulting from the chain of causation under Article 101 § 23; *all others* in that chain of causation would be subject to suit under Article 101 § 58 as "some person other than the employer to pay damages."

In the next such case, that last causal employer so disproportionately burdened in the earlier case, would find himself the second in the chain of causation, only to know that his freedom from liability for the payment of compensation benefits under Article 101 § 23 was at the cost of being compelled to defend an action by his employee for workplace disability arising out of and in the course of his employment under Article 101 § 58. The consummate irony in his predicament is that in the action against him he would be designated as "some person other than the employer."

Thus the fundamental fairness of the rule as explicated in the cited cases would be dissipated and the time-honored principle of exclusivity from liability by any other remedy for disabilities caused by the environment in the workplace would be destroyed.

Actuaries may be able to calculate the enormity of the cost to industry of such an interpretation but it requires no data from such a source to understand that the impact

---

§ 36(1)(a) *on the date when the claimant becomes permanently totally disabled."* 293 Md. at 206 (emphasis added).

would be heavy and to varied employments would range from serious to disastrous.

· The initial Maryland occupational disease statute (ch. 465, Acts of 1939) was the subject of an exceptionally able, in-depth article by the late J. Nicholas Shriver, Jr., Esquire. Shriver, *The Maryland Occupational Disease Law,* 4 Md. L.Rev. 133 (1940). The article traces the legislative history of the Act from the appointment by Governor Nice in October 1935 of the "Maryland Commission for the Study of Occupational Diseases"; through the drafting of the legislation by the Commission; to the unamended, unanimous passage of the draft legislation through both houses of the Legislature in 1939. The article lists the names of the distinguished members of the Commission who served upon it, representing the medical, labor, insurance and legal communities. 4 Md.L.Rev. at 136 n. 38.

The author of the article commented that

"The Commission immediately began its work, and public hearings were held. The Surgeon General of the United States was requested to direct a survey of Maryland industry aimed at a determination of the Occupational Disease hazards and exposures in this State. At the public hearings, which were widely advertised, many of the leading medical authorities in the United States appeared and testified. Interested employees, employers and insurance companies also were heard. In addition to these public hearings and to the report of the Surgeon General of the United States, *the Commission made a complete survey of the laws in states which had already enacted Occupational Disease statutes." Id.* at 137 (emphasis added).

We conclude that legislative enactment of the last injurious exposure rule was made with full knowledge of the rationale for the rule so clearly stated in *Employers Mut. Liability Ins. Co. v. McCormick* and with complete understanding that fundamental fairness demanded that the rule be applied uniformly and universally in order that the

burden assigned to the last causal employer would—over the long haul—be equalized among all causal employers under the law of averages.

We conclude further that the Legislature did not intend to alter the exclusivity provisions of the Workmen's Compensation Law by initiating the metamorphosis of a causal employer to a "stranger to any compensation proceedings" as suggested in the brief of the appellants.

Accordingly, we hold that the Legislature in adopting the last injurious exposure rule whereby occupational disease liability is *assigned* solely to the last causal employer by §§ 22(a) and 23(b) of Maryland Code, Article 101 (§§ 32B and 32C of the initial Occupational Disease Act, ch. 465, Acts of 1939), did not intend thereby to subject other causal employers to third party liability under the provisions of Section 58 of the Workmen's Compensation Act.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.